[Crim. No. 17015. First Dist., Div. Two. Aug. 22, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID WALLY OTT, Defendant and Appellant.

COUNSEL

Shapiro, Shapiro & Shapiro and Carl B. Shapiro for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and R. Gordon Baker, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KANE, J.—Defendant appeals from a judgment of conviction[1] entered upon a jury verdict finding him guilty of sale of a controlled substance (methamphetamine) in violation of Health and Safety Code, section 11379. The charge and conviction grew out of an undercover narcotics operation, the circumstances of which may be summarized as follows:

About 5:20 p.m. on May 18, 1976, Inspector John Eisler, an officer of the Solano County Bureau of Narcotic Enforcement, and his informant, one Robin Saunders, went to Traveler's Inn Motel (aka Kentwig Motel), Vallejo, California. Saunders had informed Eisler that Larry Hershman, known to him as "Cherokee," was residing in room 53 of the motel and was selling narcotics.

Upon entering the room, Eisler and Saunders negotiated to buy a quantity of amphetamine, a controlled substance, from Hershman. While Hershman agreed to sell them a quarter ounce of amphetamine for $80, he stated that he did not have any drugs at the moment, but was

---

[1]Defendant also purports to appeal from the order granting probation. However, where, as here, sentence has been pronounced, the sentence itself is the final judgment from which the appeal is to be taken (*People* v. *Howerton* (1953) 40 Cal.2d 217, 219 [253 P.2d 8]; *In re Phillips* (1941) 17 Cal.2d 55, 58 [109 P.2d 344, 132 A.L.R. 644]; Witkin, Cal. Criminal Procedure (1963) § 648, p. 641).

expecting his supplier—appellant—to arrive within an hour to an hour and a half; that if Eisler returned after his supplier came, he could purchase the drug.

After agreeing to the terms of the sale, Eisler and Saunders left room 53. On leaving, they encountered appellant who was sitting on the steps leading from the sidewalk to the parking lot and was listening to police calls through his four-channel radio scanner. Since Saunders and appellant had been old acquaintances, Saunders greeted Ott and introduced Eisler to him. Ott inquired why Saunders and Eisler were in Hershman's room. On learning that they were attempting to purchase drugs from Hershman, he stated: "Why are you scoring from that turkey for? That's my dope he's selling. Why go through the middleman? You and I can do something better." When asked if he had any drugs, appellant patted a wallet in his rear pocket and replied, " 'Right here.' "

After the above described encounter and discussion, appellant started walking towards Hershman's motel room, inviting Eisler, Saunders and James Exxon, a friend of appellant who had arrived during the conversation, to accompany him. Shortly after entering the room and exchanging greetings, Hershman, appellant, Exxon and Hershman's girlfriend, Cheryl Rickard, had a conversation in the rear of the room behind a partition. Exxon and Rickard were the first to emerge from behind the partition. Hershman followed and, holding a plastic bag which contained a white powdery substance, stated that he had just "scored a half ounce" and that they could consummate the sale when he found his "rig, kit," necessary for packaging the drug.

At Hershman's direction, Eisler and Saunders searched Hershman's car for the "rig, kit." While searching the car, they noticed that the trunk was filled with men's and women's clothes. After the "rig, kit" was found, Hershman and Eisler went to the rear of the motel room and packaged the drugs behind the partition. Eisler selected four of the bags into which the powder had been "cut," and paid Hershman $80 as they had previously agreed. Upon leaving the room, appellant told them that they should contact him next time they wanted to buy drugs by repeating " 'That turkey [Hershman] is dealing my drugs.' " The powdery substance purchased from Hershman was subsequently analyzed and found to be nonpharmaceutically produced methamphetamine.

At trial Hershman, Rickard and appellant denied that appellant had delivered drugs to Hershman. Appellant advanced the explanation that

he and Exxon went to the Travelers Inn to deliver some clothes that belonged to Hershman. He stated that he did not give any drugs to Hershman while they were behind the partition. However, during his trial testimony, appellant admitted that at a certain point of his conversation with Eisler he had stated " 'I have got all kinds of drugs,' " and also that he had told them that "they ought to score off of me instead of that turkey Cherokee."

Appellant assails the judgment of conviction on multiple grounds. Thus it is contended that (1) the trial court erred in denying appellant's motion to suppress evidence pursuant to Penal Code[2] section 1538.5; (2) evidence of other crimes was erroneously admitted and the prosecution's failure to give adequate notice that evidence of other crimes would be offered violated appellant's right to a fair trial; (3) the trial court erroneously instructed the jury on the elements of aiding and abetting; (4) the corpus delicti of the crime was proved by appellant's admission rather than independent evidence; and (5) the trial court made improper remarks with respect to the elements of aiding and abetting. Appellant's contentions are discussed seriatim.

*Suppression of Evidence*: Appellant first contends that the trial court committed prejudicial error by admitting in evidence a fictitious driver's license and a vehicle registration report, both of which were obtained as a result of a warrantless search of the premises at 5092 Black Oak Drive, Concord, California. Appellant maintains that the search in dispute was an unjustified parole search not necessitated by the legitimate demands of the operation of the parole process (*In re Martinez* (1970) 1 Cal.3d 641, 647 [83 Cal.Rptr. 382, 463 P.2d 734], fn. 6; *People* v. *Coffman* (1969) 2 Cal.App.3d 681, 688 [82 Cal.Rptr. 782]), and involved premises which did not serve as apellant's residence. Appellant's argument cannot be accepted for several reasons.

■ One, while parolees are protected against unreasonable search and seizure (*In re Martinez, supra,* fn. 5; *People* v. *Coffman, supra*), it is well established that a parole officer may enter and search a parolee's residence even if the information relied on by the parole officer does not reach the level of probable cause required under the Fourth Amendment (*People* v. *Lamb* (1972) 24 Cal.App.3d 378, 382 [101 Cal.Rptr. 25]). As stated in *People* v. *Thompson* (1967) 252 Cal.App.2d 76, 85 [60 Cal.Rptr. 203], "The rationale underlying this principle is that a parolee is at all

---

[2]Unless otherwise indicated, all references will be made to the Penal Code of California.

times in *custodia legis.* Although he is not a prison inmate in the physical sense, he is serving the remainder of his term outside rather than within the prison walls. [Citations.] Accordingly, so far as necessary for the maintenance of parole guardianship, the status of a parolee as a prisoner is no different than that of one who remains in confinement, and, therefore, for the purpose of maintaining the restraints and social safeguards accompanying such status, the correctional authorities who supervise the parolee on parole may subject him, his home and his effects to such constant or occasional inspection and search as may seem advisable to them." (Accord: *People* v. *Ford* (1975) 54 Cal.App.3d 149, 153 [126 Cal.Rptr. 396]; *People* v. *Anglin* (1971) 18 Cal.App.3d 92, 95 [95 Cal.Rptr. 588].) It is likewise well settled that where a parole officer initiates a supervisory parole search, he may enlist the assistance of the police (*People* v. *Thomas* (1975) 45 Cal.App.3d 749, 758 [119 Cal.Rptr. 739]; *People* v. *Coffman, supra*). The fact that a parole officer cooperates with ordinary peace officers does not render a parole search invalid. On the contrary, when the parole officer exercises independent judgment and undertakes the search for the purpose of supervising the parolee, discovering parole violations and the protection of the public, the search is legal and unassailable (*People* v. *Gilkey* (1970) 6 Cal.App.3d 183, 190 [85 Cal.Rptr. 642]; *People* v. *Coffman, supra*).

When viewed in light of the foregoing principles, the facts indicate that the parole search of appellant's residence was fully justified, and the items in dispute which had been developed as a result of a lawful search were admissible in evidence. Briefly described, the facts reveal that after appellant had been arrested, Sergeant Morrison informed appellant's parole officer, Cardoza, that during appellant's arrest goods were observed in appellant's residence which appeared to be stolen merchandise and also that appellant acted "kind of strangely" upon being booked. Based upon this information, which raised the suspicion that appellant may have been under the influence of narcotics[3] when he was arrested and/or may have otherwise violated his parole, Cardoza initiated a parole search of the residence, which included the garage as well. The license plate of the automobile which led to the evidence appellant sought to suppress was discovered during the search of the garage. In sum, since the search was parole oriented (i.e., it was not for the purpose of discovering evidence that appellant participated in the May 1976 drug transaction, but rather was to determine if appellant had violated his parole by unlawfully possessing narcotics), and since the license plate leading to the

---

[3]During his testimony, Cardoza explicitly stated that, due to appellant's prior history of selling drugs, he was primarily concerned with finding narcotics in the house.

incriminating fictitious documents was found in the course of a permissible parole search, the evidence in dispute was clearly admissible at trial.

Appellant's reliance on *People* v. *Coffman, supra,* 2 Cal.App.3d 681, is obviously misplaced. In *Coffman,* the police initiated the search of the parolee's apartment and the parole officer was invited solely in order to supply color of legality to a warrantless entry of the apartment and to serve as a "front" for the police. In contrast, in the case at bench Cardoza exercised independent judgment of evaluating the information received from the police and he himself *initiated*[4] the search for the avowed purpose of discovering a probable violation of parole.

Appellant's alternative argument that even if the parole search was valid, the search of the residence at 5092 Black Oak Drive was improper because he had informed his parole officer that he was not living in his home any more, is likewise without substance. While the record indicates that appellant had told Cardoza that he resided in various motels, the evidence is uncontroverted that the Black Oak residence was appellant's home, his last known address and also the place where he was arrested. It is settled that where, as here, the parole officer is justified in searching the parolee's residence, he may search a residence reasonably believed to be the parolee's (cf. *People* v. *Kanos* (1971) 14 Cal.App.3d 642 [92 Cal.Rptr. 614]).

Although our conclusion that the search of appellant's residence was a legitimate parole search is by itself dispositive of appellant's claim, we note that the search in dispute is also sustainable on the further ground that the license plate, which triggered the further police investigation leading to the fictitious driver's license and vehicle registration report, was in plain view. As the record indicates, on July 26, 1976, Officer Hayes and other members of the Concord Police Department arrived at appellant's home to arrest him pursuant to an arrest warrant. In order to secure the premises, one officer went to the rear yard from where he saw that there was a car in the garage. This information was relayed to Officer Hayes. Hayes, who was standing on the driveway, noticed that the front door of the garage was ajar. From his position on the driveway, the officer could observe the car, including its license plate. He took down the license number and ran a check on the vehicle. The check revealed that the car was registered to "David Rawlings" of Rodeo. Subsequently, it

[4]The illustrative portion of the record reads as follows: "Q. Agent Cardoza, did you initiate a parole search of the house and garage at that place of arrest? A. Yes, that's correct."

was discovered that appellant had obtained a fictitious driver's license under the name of "David Rawlings." ■ It is, of course, well settled that observations of things in plain sight made from a place where the police officer has a right to be, do not amount to a search in the constitutional sense, and that items in plain sight are subject to seizure and admissible in evidence (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33]; *People* v. *Sirhan* (1972) 7 Cal.3d 710, 742 [102 Cal.Rptr. 385, 497 P.2d 1121]).

*Admission of Other Crimes in Evidence*: Appellant next argues that the admission of the fictitious driver's license and vehicle registration report was assailable upon other grounds as well. First, it is contended that the items in question constituted evidence of other crimes (Veh. Code, § 20[5]) and were either inadmissible under Evidence Code section 1101, subdivision (b), or excludable under Evidence Code, section 352. In the alternative, it is claimed that appellant was denied a fair hearing because the prosecutor failed to give adequate notice that evidence of other crimes would be offered. Appellant's contention is mistaken on both counts.

■ In addressing the first question, we note that, contrary to appellant's position, Evidence Code, section 1101, does not prohibit the introduction of other crimes if they are relevant to prove some fact exemplified in the statute.[6] ■ The general test of relevancy is whether the evidence tends logically, naturally or by reasonable inference to establish any factual material for the People or to overcome any material matter sought to be proved by the defense (*People* v. *Peete* (1946) 28 Cal.2d 306, 315 [169 P.2d 924]; *People* v. *Enos* (1973) 34 Cal.App.3d 25, 34 [109 Cal.Rptr. 876]).

■ Tested by these principles, the fictitious documents were clearly admissible even if they constituted a crime. The false driver's license and registration report demonstrated appellant's scheme to avoid apprehension. As repeatedly emphasized in case law, evidence of a design to

[5]Vehicle Code section 20, provides that "It is unlawful to use a false or fictitious name, or to knowingly make any false statement or knowingly conceal any material fact in any document filed with the Department of Motor Vehicles or the Department of the California Highway Patrol."

[6]Evidence Code section 1101, subdivision (b), sets out that *"Nothing in this section prohibits the admission of evidence that a person committed a crime,* civil wrong, or other act *when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan,* knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts." (Italics added.)

prevent arrest or prosecution supports the inference of consciousness of guilt and is relevant and admissible to prove the prosecution's case (*People* v. *Terry* (1970) 2 Cal.3d 362, 395 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Moody* (1976) 59 Cal.App.3d 357, 361 [131 Cal.Rptr. 923]; *People* v. *Maxey* (1972) 28 Cal.App.3d 190 [104 Cal.Rptr. 466]).

Appellant's claim that the items at issue should have been excluded under Evidence Code, section 352, cannot be accepted either. While this latter code section authorizes the court to exclude relevant evidence when its probative value is outweighed by its prejudicial effect, it is blackletter law that exclusion of evidence on this basis is entirely discretionary with the trial court and, absent a clear abuse, its ruling will not be disturbed on appeal (*People* v. *Terry, supra*, at p. 403; *People* v. *Seastone* (1969) 3 Cal.App.3d 60, 64-65 [82 Cal.Rptr. 907]). As pointed out earlier, the admission of false documents here was highly relevant to show appellant's consciousness of guilt. At the same time the evidence complained of did not raise the danger that the jury would believe that because appellant violated the Vehicle Code he was likely to sell the controlled substance in violation of the Health and Safety Code. To put it briefly, since it was not demonstrated that the introduction of false documents presented a danger that appellant would be found guilty because of his prior criminal conduct and regardless of his guilt of the crime charged, no abuse of discretion may be claimed.

■ Appellant's alternative contention that he was denied a fair hearing because he was not given adequate notice that the fictitious documents would be introduced by the prosecutor is not borne out by the evidence. To begin with, the record discloses that appellant and his counsel knew at least one day earlier that the false license and registration would be offered in evidence. Moreover, there is a complete failure to show that appellant requested a recess or continuance to further prepare for the suppression hearing of said documents. Finally, the record reveals that appellant was in fact accorded a full and fair hearing, at which he had an unfettered opportunity to develop facts concerning the acquisition and contents of the incriminating documents, and to cross-examine the witnesses participating in the search and seizure. In light of this record, appellant's assertion that he was surprised by the prosecution presentation of the false documents must be deemed specious indeed.

*Instruction on Aiding and Abetting*: Appellant's criminal liability was predicated upon the theory that he aided and abetted the drug sale effected by the principal, Hershman. Consistently therewith, the jury was

instructed on aiding and abetting per CALJIC No. 3.01 (1974 revision), which states that "A person aids and abets the commission of a crime if, *with knowledge of the unlawful purpose of the perpetrator of the crime,* he aids, promotes, encourages or instigates by act or advice the commission of such crime." (Italics added.) ▪ Appellant contends that CALJIC No. 3.01 constitutes a misstatement of law because it fails to specify that in order to be criminally liable the aider and abettor must not only know of the wrongful purpose of the perpetrator, but also must share the criminal intent with which the crime was committed (§ 20; *People* v. *Durham* (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198]).

While several California cases have stated that the aider and abettor must share the intent of the one doing the criminal act (*Pinell* v. *Superior Court* (1965) 232 Cal.App.2d 284, 287 [42 Cal.Rptr. 676]; *People* v. *Villa* (1957) 156 Cal.App.2d 128, 133-134 [318 P.2d 828]; *People* v. *Hill* (1946) 77 Cal.App.2d 287, 293 [175 P.2d 45]), an examination of the authority upon which the proposition relies indicates that it is the knowledge of the actor's wrongful purpose—rather than his intent—which must be shared.

Section 31, the basic statute defining principals, includes those who "aid" and "abet" in the commission of the act constituting the offense. As the cases explain, "aid" within the meaning of the section means to assist, to help or to supplement the efforts of another and does not imply guilty knowledge of felonious intent. On the other hand, to "abet" a person in the perpetration of a crime, one must aid or assist the perpetrator with the requisite mental state, i.e., with knowledge of his wrongful purpose (*People* v. *Tambini* (1969) 275 Cal.App.2d 757, 765 [80 Cal.Rptr. 179]; *People* v. *Ellhamer* (1962) 199 Cal.App.2d 777, 781 [18 Cal.Rptr. 905]; *People* v. *Williams* (1960) 179 Cal.App.2d 487, 490 [3 Cal.Rptr. 782]). In consonance therewith, it has been held that the test of aiding and abetting is whether the accused in any way, directly or indirectly, aided the perpetrator or advised and encouraged the commission of the offense with knowledge of the latter's wrongful purpose (*People* v. *Butts* (1965) 236 Cal.App.2d 817, 836 [46 Cal.Rptr. 362]; *People* v. *Demes* (1963) 220 Cal.App.2d 423, 432 [33 Cal.Rptr. 896]; *People* v. *Masters* (1963) 219 Cal.App.2d 672, 679 [33 Cal.Rptr. 383]; *People* v. *Tambini, supra*).

Recent case law development is in full accord. Thus, in *People* v. *Terry, supra,* 2 Cal.3d at page 401, the Supreme Court stated that codefendant Juanelda Allen "was an aider or abettor if, with knowledge of Terry's criminal purpose, she encouraged, promoted or assisted in the commission of the crimes." Likewise, in *People* v. *Standifer* (1974) 38 Cal.App.3d

733, 743 [113 Cal.Rptr. 653], the court emphasized "All that is required to convict a person of 'aiding and abetting' is that he aid and abet with knowledge of the wrongful purpose of the perpetrator of the crime." Finally, in reaffirming that "aid and abet" means to encourage or aid with guilty knowledge of the wrongful purpose of the perpetrator, the court spelled out, in *People* v. *Scofield* (1971) 17 Cal.App.3d 1018, 1026-1027 [98 Cal.Rptr. 405], that " 'The logical basis for conviction as an aider and abettor is that *with knowledge of the unlawfulness of the act,* one renders some independent contribution to the commission of the crime or otherwise makes it probable that the crime will be successfully completed than would be the case absent such participation.' (Italics supplied.)"

But aside from the cited authorities, appellant's insistence that the definition given in CALJIC No. 3.01 is fatally defective because it omits the element of criminal intent, is also ill founded for the simple reason that aiding in the commission of the crime with knowledge of the wrongful purpose of the perpetrator *eo ipso* establishes the criminal intent. As stated in *People* v. *Ellhamer, supra,* 199 Cal.App.2d at page 782, "But it is the knowledge of the wrongful purpose of the actor plus the encouragement provided by the aider and abettor that makes the latter equally guilty. Although the guilt of the aider and abettor is dependent upon the actor's crime, *the criminal intent of the aider and abettor is presumed from his actions with knowledge of the actor's wrongful purpose.*" (Italics added.)

*Proof of Corpus Delicti*: Appellant next claims that the judgment of conviction is infirm because the corpus delicti of the crime was established by his extrajudicial statement or admission rather than by independent evidence (*People* v. *Navarro* (1969) 271 Cal.App.2d 576 [76 Cal.Rptr. 660]; *People* v. *Parker* (1954) 122 Cal.App.2d 867 [265 P.2d 933]). ██ In essence, appellant takes the position that in case of aiding and abetting the knowledge and intent of the defendant are the elements of the corpus delicti which must be proved by independent evidence, not by the accused's own statement, as happened in the instant case. Appellant's position is patently mistaken.

██ The corpus delicti consists of two elements: (1) the injury or loss or harm; and (2) a criminal agency causing the harm (*People* v. *Dorsey* (1974) 43 Cal.App.3d 953, 961 [101 Cal.Rptr. 826]; 1 Witkin, Cal. Crimes (1963) ed.) § 88, p. 84). The term criminal agency relates to acts in violation of law (*People* v. *Scott* (1959) 176 Cal.App.2d 458, 503 [1 Cal.Rptr. 600]). Proof of "criminal agency" requires evidence from which

it might be concluded that the injury or harm resulted from the intentional act of a human being (*People* v. *Lopez* (1967) 254 Cal.App.2d 185, 189 [62 Cal.Rptr. 47]). The proof of corpus delicti need not be beyond a reasonable doubt. Quite to the contrary, only a slight prima facie showing is necessary, and such showing may also be established by circumstantial evidence (*People* v. *Mehaffey* (1948) 32 Cal.2d 535, 545 [197 P.2d 12]; *People* v. *Cullen* (1951) 37 Cal.2d 614 [234 P.2d 1]; *People* v. *Stroble* (1951) 36 Cal.2d 615, 619-620 [226 Cal.Rptr. 330]). Even more to the point, the cases emphasize that the identity of the perpetrator is not a part of the corpus delicti, and that the prosecutor need not identify the perpetrator or connect the defendant to the crime (*People* v. *Cullen, supra,* at p. 624; *People* v. *Leary* (1946) 28 Cal.2d 740, 745 [172 P.2d 34]; *People* v. *Dorsey, supra,* 43 Cal.App.3d at p. 961). As the court put it in *People* v. *Cobb* (1955) 45 Cal.2d 158, 161 [287 P.2d 752], "*All that need be shown by independent evidence* before a confession may be introduced *is that a crime has been committed by someone.*" (Italics added.)

■ Applying the foregoing rules to the case at bench, it is unquestionable that the corpus delicti of the crime was established by showing that a sale of a controlled substance took place in violation of Health and Safety Code, section 11379. As respondent aptly points out, aiding and abetting is not a substantive crime, but merely a theory of liability. As a consequence, the corpus delicti must be established with respect to the underlying criminal offense, rather than the theory of aiding and abetting which, in the absence of the commission of the main crime, would not be punishable at all.

We are aware that in *People* v. *Parker* (1954) 122 Cal.App.2d 867 [265 P.2d 933], a case involving aiding and abetting, the court arrived at a different conclusion. We are persuaded, however, that the reasoning of *Parker* is unsound and does not reflect the applicable law. As emphasized before, the identity of the actor and his connection to the crime are not elements of the corpus delicti.

*Judicial Misconduct*: Appellant's last argument that the trial judge prejudiced his cause by improperly commenting on the elements of aiding and abetting, may be summarily rejected for two main reasons. ■ One, it is well settled that in the absence of an objection or request for admonition, the appellant may not raise a claim of judicial misconduct on appeal (*People* v. *Terry, supra,* 2 Cal.3d at p. 398; *People* v. *Corrigan* (1957) 48 Cal.2d 551, 556 [310 P.2d 953]). As appellant failed to object to the judge's remarks at trial, he cannot assign them as

misconduct on appeal. ██ Two, the statement of the judge set forth the applicable law supported by the evidence of the case and was aimed at preventing trial counsel from misleading the jury. It goes without saying that the trial judge has the right and indeed the duty to curtail defense counsel from making incorrect or incomplete statements of law (*People* v. *Sudduth* (1966) 65 Cal.2d 543, 548 [55 Cal.Rptr. 393, 421 P.2d 401]; *People* v. *Baldwin* (1954) 42 Cal.2d 858, 870-871 [270 P.2d 1028]).

The judgment is affirmed; the purported appeal from the order granting probation is dismissed.

Taylor, P. J., and Rouse, J., concurred.