[Crim. No. 13126. Third Dist. Sept. 13, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
WILBERT ROGERS et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*See footnote 1, *post,* page 504.

504

**COUNSEL**

Gretchen Dumas and Laurence G. Chaset, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Willard F. Jones and Roger E. Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BLEASE, J.**—Wilbert Rogers and Joseph Vann, Jr. appeal from convictions of attempted murder of the first degree (Pen. Code, §§ 187, 189, 664), attempted murder of the second degree (*ibid.*), and robbery (Pen. Code, § 211); findings of firearm use (Pen. Code, §§ 12022 subd. (a), 12022.5) and, in Rogers' case, intentional infliction of great bodily harm (Pen. Code, § 12022.7). Both defendants claim multiple errors in the trial. We will affirm the judgments of conviction.

The issue we consider in the published portion of this opinion[1] is whether *Beeman* error *(People v. Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60,

---

[1]The Reporter of Decisions is directed not to publish parts I, II and III of the Discussion and otherwise to publish the opinion. (See Cal. Rules of Court, rules 976 and 976.1.).

674 P.2d 1318]), as contained in CALJIC No. 3.01 (1980 rev.) (hereafter CALJIC No. 3.01) given here, i.e., the failure to explicitly instruct the jury that the offense of aiding and abetting requires an intent to facilitate the criminal offense aided, compels a reversal of defendant Vann's convictions of attempted murder. As we will explain, the validity of the murder convictions depends upon the validity of the robbery conviction and the validity of the robbery conviction depends upon the aiding and abetting instruction. We hold, for reasons which we will develop, that, *as applied* to the facts of this case, CALJIC No. 3.01 conveyed the intention required by *Beeman.* Thus its use in this case, though generally deemed error by *Beeman,* cannot have been prejudicial to defendant Vann. The convictions predicated upon it will be affirmed.

FACTS

We begin with the account of Carl and Ruby Yerger. The Yergers were at home at about 8:30 p.m. on February 16, 1984. Ruby Yerger was in bed asleep. The Yergers' dog, chained outside the house, began barking. Carl Yerger looked out the kitchen window. He saw Anthony Perkins[2] and defendant Rogers. Yerger knew Perkins, who had been by earlier in the day with defendant Vann.

Yerger opened the door. Perkins walked in with Rogers behind him and the trio continued into the living room. Perkins asked to borrow some money. Yerger hesitated because Perkins appeared drunk. Rogers pressed a small caliber pistol hard against Yerger's ribs and demanded that Yerger surrender money, "dope," and any other valuables. Yerger asked Perkins to get Rogers "off of me." Perkins looked at the gun and left the room. Ruby Yerger awoke to see Perkins depart. There was a mirror in her bedroom that permitted a view of a portion of the living room through the partially open door.

Defendant Vann came quickly into the living room. Vann said to Rogers, "Get the gun, man, get the gun." Then he said, "I'll get it." He reached over and removed a .38 caliber pistol from Yerger's pocket. Vann pointed the pistol at Yerger and told him to do what Rogers said.

Rogers threatened Yerger, implying he would be shot if he were not compliant. Rogers ordered Yerger to get down on his knees but Yerger would not. Rogers pointed his pistol at Yerger's head. Carl Yerger testified he moved away from Rogers and that Rogers shot him, once in the jaw and once in the arm. Ruby Yerger described her husband's movement as scuffling or struggling, but said he was not struggling for Roger's gun.

---

[2]Perkins was tried as a codefendant with Rogers and Vann. He did not testify. The jury returned a verdict of not guilty in Perkin's favor on all counts.

After he was shot, Carl Yerger saw Rogers pick up Ruby Yerger's purse that was lying on a couch and open it. Yerger was getting up when Vann hit him on the head with the .38 caliber pistol and shot him in the ear. Vann then left the scene. As Vann was departing, Rogers shot Ruby Yerger, who was still lying in bed, from the bedroom doorway. Rogers then fled. Carl Yerger retrieved another pistol he kept hidden in a boot at the end of his couch and pursued the attackers; but when he got outside they were gone. He has not seen his .38 caliber pistol since. Ruby Yerger testified that the contents of her purse were missing.

Defendants Rogers and Vann testified to a different scenario. They had gone to Carl Yerger's house to buy cocaine. Vann dropped off Perkins and Rogers and drove down the street to park. Rogers said that after he and Perkins entered the house and initiated the drug purchase Carl Yerger became angry. He chastized Perkins for bringing Rogers along. He pulled out a gun and chased Perkins out of the house. Rogers ran into the bedroom, hoping to find another exit. When Carl Yerger came into the bedroom Rogers jumped him. They struggled and one shot was fired in the bedroom. The struggle continued back into the living room.

Vann testified he met Perkins running out of the house. Perkins yelled that Carl Yerger had pulled a gun. Vann ran into the house and saw the struggle. He pulled Yerger's gun from his pocket and set it on the table. Yerger continued to fight so Vann picked up the pistol again and hit him on the head. Vann's finger was on the trigger and the pistol fired. Yerger was falling and Vann yelled to Rogers that they should flee.

Rogers testified that when Vann hit Carl Yerger, Yerger dropped the pistol that he and Rogers had been struggling over. Rogers picked it up. As he was leaving Yerger was getting up with another pistol in his hand. Rogers testified he then shot Yerger twice in self-defense.

DISCUSSION*

I

. . . . . . . . . . . . . . . . . . . . . .

IV

█ █ Vann was tried on the theory that he aided and abetted the robbery and that the attempted murders of the Yergers were the natural and

*See footnote 1, *ante,* page 504.

probable consequences of the robbery. Thus, we proceed on the assumption that the jury found Vann guilty on these theories. That makes the validity of the aiding and abetting instruction critical to his convictions for these offenses.

The jury was instructed in the language of CALJIC No. 3.01 that "[a] person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime." *People* v. *Beeman, supra,* 35 Cal.3d 547, holds that it is error to give such an instruction because "the weight of authority and sound law require proof that an aider and abettor act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." (*Id.,* at pp. 556 and 560, original italics.)[7]

 Vann contends that reversal of his convictions of attempted murder is compelled because the instructional error permitted the jury to convict him without a determination that he intended to facilitate Rogers' attempts to murder the Yergers. The contention has no merit. The validity of the murder convictions does not depend on the intent he poses. It rests on the finding that the murder convictions were the natural and probable consequences of the robbery which he aided and abetted.

 However, this conclusion depends upon the validity of the robbery conviction and the validity of the robbery conviction depends upon the effect of the *Beeman* error, an issue we now address.

### A.

We take as a factual predicate for our inquiry that the jury followed the erroneous instruction, applied CALJIC No. 3.01, and found that Vann aided Rogers and that at the time Vann acted he knew that Rogers was perpetrating a robbery. We augment these facts by adopting the most favorable assumption for Vann, that he acquired knowledge of Rogers' criminal purpose after he entered the Yergers' living room.

Vann's undisputed acts aiding the robbery were taking Carl Yerger's pistol from him and subsequently striking him with it. As we will show, this

---

[7]*Beeman* suggests, as an appropriate instruction, "that a person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*Beeman, supra,* 35 Cal.3d at p. 561.) This instruction differs from CALJIC No. 3.01 in that it adds a clause making explicit the required intent to facilitate or encourage the offense.

voluntary conduct, occurring during the robbery with knowledge of Rogers' criminal purpose, satisfies a *criterion* of intention (to facilitate the crime) impliedly recognized by *Beeman.* (Cf. *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 960 [127 Cal.Rptr. 135, 544 P.2d 1353].) Since CALJIC No. 3.01 embodies this criterion (absent certain ambiguities to be examined) it could not have misled the jury to Vann's prejudice.

### B.

*Beeman* left open the question whether the instructional error in CALJIC No. 3.01 is reversible per se. (35 Cal.3d at pp. 561-563.) The issue has has been the subject of numerous appellate decisions, most of which have been depublished or granted review by the California Supreme Court. (See *People* v. *Acero* (1984) 161 Cal.App.3d 217, 228, fn. 9 [208 Cal.Rptr. 565].) In *Acero* the court held that the error was reversible premised on the holding in *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826]. The foundation of the premise is contained in two assertions. *Garcia* said: "We observed [in *Beeman*] that although the error arising from the failure to require intent 'is not identical to a conclusive presumption or to placing the burden of persuasion on the defendant, it is just as effective—if not more effective—in removing the issue of intent from the jury's consideration.'" (*Id.,* at p. 554, fn. 9.) *Garcia* also said that "instructions or omissions which deny a defendant his right to have the jury decide each element of a charged offense are necessarily reversible error." (*Id.,* at pp. 549-550.) It follows that if CALJIC No. 3.01 removes the element of intent from jury consideration, the error is reversible.

Not all instructional error results in removal of intent from jury consideration, as when intent is not put in issue, is conceded, or is covered by other instructions. (*People* v. *Garcia, supra,* 36 Cal.3d at pp. 554-555; see also *People* v. *Caldwell* (1984) 36 Cal.3d 210, 223-224 [203 Cal.Rptr. 433, 681 P.2d 274]; *People* v. *Ramos* (1984) 37 Cal.3d 136, 146-147 [207 Cal.Rptr. 800, 689 P.2d 430]; *People* v. *Allen* (1985) 165 Cal.App.3d 616, 628-629 [211 Cal.Rptr. 837].) Absent these circumstances, and none are precisely present here,[8] it would ordinarily be assumed that reversal of the judgment for *Beeman* error is required. (*Acero, supra,* 161 Cal.App.3d at pp. 226-228; see also *People* v. *Olmedo* (1985) 167 Cal.App.3d 1085,

---

[8]Nor do we rely upon a fourth circumstance articulated in *Garcia* and applicable "where the parties recognized that intent . . . was in issue, presented all evidence at their command on that issue, and . . . the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration." (36 Cal.3d at p. 556; and see *People* v. *Henderson* (1985) 163 Cal.App.3d 1001, 1010-1011 [209 Cal.Rptr. 883].) We do not resolve this case on the ground that, notwithstanding the giving of an erroneous instruction, the *evidence* exclusively establishes the required intent as a matter of law. Rather, for reasons which we develop in the text, the complete absence of any evidence of an intent contrary to that embedded in CALJIC No. 3.01 renders it correct *as applied.*

1092-1094 [213 Cal.Rptr. 742].) Intent was put in issue in this case because Vann's culpability as an aider and abettor was put in issue and because he directed attention to the intent issue by his request for an instruction based upon that suggested in *People* v. *Yarber* (1979) 90 Cal.App.3d 895 [153 Cal.Rptr. 875].[9] However, the fact that intent was in issue does not end our inquiry.

Rather, it presents the more subtle question whether, *as applied* to the facts of this case, the required intent was conveyed to the jury through CALJIC No. 3.01 because it contains a legally adequate criterion of intent. That, as will be seen, turns on whether the case presents a material issue of a contrary intent. If there is no such issue neither *Beeman* nor *Garcia* compel a reversal of Vann's convictions.

### C.

As we have said, CALJIC No. 3.01 states that "[a] person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime." *Beeman* challenges the adequacy of this instruction in two ways. The first is directed to ambiguities in the phrasing of the instruction. *Beeman* says, quoting from *People* v. *Patrick* (1981) 126 Cal.App.3d 952, 967, footnote 10 [179 Cal.Rptr. 276], that CALJIC No. 3.01 could " 'technically allow a conviction if the defendant knowing of the perpetrator's unlawful purpose, negligently or accidentally aided the commission of the crime.' " (*Id.,* at p. 560.) The defect thus exposed is the failure to unambiguously articulate the requirement that the defendant simultaneously know both the perpetrator's unlawful purpose and that his act of aid would facilitate that purpose. *Patrick, supra,* calls this dual knowledge, "knowing aid," a phrase we use to express the same notion. These ambiguities are significant if the defendant's *act* was not intended (e.g., if it were involuntary) or if the defendant, intending the act, did not know that it would aid the perpetrator's criminal venture.[10] Neither of these conditions is tendered in this case.[11]

### D.

Irrespective of these ambiguities, *Beeman* challenges the propriety of knowing aid as a measure of intent. The challenge is made by way of crit-

---

[9]The trial court declined to modify the instruction in the manner suggested by *Yarber.*

[10]This invokes a distinction between an intentional (in the sense of voluntary) act and an intent to achieve some further consequence by that act. (See generally, Anscombe, Intention (2d ed. 1976); see also *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370].) The (latter) intent (with which the act is done) presupposes that the act done was voluntary. "Every intentional action is also voluntary . . . ." (Anscombe, Intention, *supra,* at p. 90.)

[11]Vann in effect admits to the knowing aid of Rogers. On his testimony he intentionally disarmed Carl Yerger, knowing that he was the victim of a robbery and, as the jury found, he was not coerced into that act of aid.

icism of the reasoning upon which it says CALJIC No. 3.01 is premised. The reasoning is traced to *People* v. *Ellhamer* (1962) 199 Cal.App.2d 777, 782 [18 Cal.Rptr. 905] and *People* v. *Ott* (1978) 84 Cal.App.3d 118, 130 [148 Cal.Rptr. 479] which *Beeman* quotes as saying that " 'the criminal intent of the aider and abettor is *presumed* from his actions with knowledge of the actor's wrongful purpose.' " (*Beeman, supra,* at p. 557, italics added.) *Beeman* adopts as "forceful[]" and "correct[]" the statement in *People* v. *Yarber, supra,* 90 Cal.App.3d at p. 916, that: " 'The *Ellhammer/ Ott* synthesis that intent is inferred from the knowledge by the aider and abettor of the perpetrator's purpose is sound, generally, as a matter of human experience, but we cannot extrapolate therefrom, as a matter of law, that the inference *must* be drawn. Intent is what must be *proved;* from a person's action with knowledge of the purpose of the perpetrator of a crime, his intent to aid the perpetrator can be *inferred.* In the absence of evidence to the contrary, the intent may be regarded as established. But where a contrary inference is reasonable—where there is room for doubt that a person intended to aid a perpetrator—his knowledge of the perpetrator's purpose will not suffice.' " (35 Cal.3d at pp. 557-558, original italics.) This quote will provide a primary text for our analysis.

As *Beeman* noted, *Ellhammer* and *Ott* viewed the relationship between knowing aid and intent as a presumption. This is in error, says *Beeman,* because "the facts from which a mental state may be inferred must not be confused with the mental state that the prosecution is required to prove." (*Beeman, supra,* at p. 558.) That would appear to suggest the presence of a presumption. However, *Beeman* says that the "error which flows from the giving of CALJIC No. 3.01 is not identical to a conclusive presumption or to placing the burden of persuasion on the defendant . . . ." (*Beeman* at p. 561, fn. 4; citations omitted; *People* v. *Garcia, supra,* 36 Cal.3d at p. 554, fn. 9.) *Beeman* does not offer an explanation of this assertion but we shall pursue one.

■ A presumption is a substantive rule of evidence, an "assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (a).) ■ CALJIC No. 3.01 does not facially state a presumption, i.e., it does not state that from the facts of knowing aid the fact of intent is established. Rather, it defines aiding and abetting as knowing aid (albeit ambiguously). However, this definition achieves the effect of a presumption if knowing aid is not a proper measure of the required intent, i.e., if it incorrectly stands in for or goes proxy for the required measure of intent. In that case CALJIC No. 3.01 misdefines the law. Whether or not we call this a presumption, it "is just as effective—if not more effective—in removing the issue of intent from the jury's consideration." (*Beeman, supra,* 35 Cal.3d at p. 561, fn. 4.)

However, knowing aid is not presumptive of anything else (called intent) if it operates as a legally appropriate *criterion* of the required intention as applied to the facts of the case. As we shall show, it then embodies the intention required of an aider and abettor.[12]

*Beeman* stops far short of concluding that CALJIC No. 3.01, insofar as it embraces knowing aid, may never be applied as a criterion of intent. Rather, as *Beeman* says, it is defective because it does not account for the case in which a contrary inference (negating intent) "is supported by circumstantial evidence regarding the actions of the accused." (*Beeman, supra,* at p. 559.) Thus "CALJIC No. 3.01 inadequately defines aiding and abetting because it fails to *insure* that an aider and abettor will be found to have the required mental state . . . ." (*Beeman, supra,* p. 560, italics added.) This criticism is limited to the circumstances of its application. The additional insurance provided by the explication of the intent requirement is unnecessary when the conditions to which it applies do not arise, i.e., when there is no evidence which would support an inference negating the intent conveyed by CALJIC No. 3.01. The reason for this, says *Beeman* quoting from *Yarber,* is that "[*i*]*n the absence of evidence to the contrary, the intent may be regarded as established*" from "a person's action with knowledge of the purpose of the perpetrator of a crime . . . ." (*Beeman, supra,* p. 558, italics added.) The same point is made in *People* v. *Tewksbury, supra,* 15 Cal.3d at p. 960 with respect to the test of an accomplice:[13] "the intent requirement is *satisfied* if [the putative accomplice], prior to its commission, realized that a robbery was being planned and that [he or] she was facilitating its commission." (Italics added; See *People* v. *Patrick, supra,* 126 Cal.App.3d at p. 967, fn. 10; and see *People* v. *Vasquez* (1972) 29 Cal.App.3d 81, 87 [105 Cal.Rptr. 181].)[14] What these cases say is that

---

[12]In this context the criterion defines the concept of intent *as applied* to a factual setting. It is very much of a piece with common law reasoning. It is defeasible, which is to say that its utility is limited to the circumstances which give rise to its applicability. It may be defeated, i.e., does not count as intention, when such circumstances do not exist. (See Cavell, The Claim of Reason (1979) Criteria and Judgment, pp. 3-36.) Insofar as intention is viewed as an inner process it would appear that criteria are necessary for its measurement. "An 'inner process' stands in need of outward criteria." (Wittgenstein, Philosophical Investigations (1958) § 580; cf. Cavell, The Claim of Reason, *supra,* at pp. 96-100.) "Direct evidence of the mental state of the accused is rarely available except through his or her testimony." (*Beeman, supra,* p. 558.)

[13]The "test and meaning [of an accomplice], are expressed in section 31 of the Penal Code." (*People* v. *Coffey* (1911) 161 Cal. 433, 442 [119 P. 901]. Among, other things, Penal Code section 31 defines principals to a crime as persons who "aid and abet in its commission."

[14]*Beeman* quotes this passage from *Tewksbury* (p. 558) but says, "Our statement there regarding satisfaction of the intent requirement may fairly be read to say that *proof* of the aider and abettor's intent may be made by way of an inference from her volitional acts with knowledge of their probable consequences." (pp. 559-560.) Framing the issue this way leaves open the possibility of counter proof. If there is evidence of a contrary intent, the relation of proof to intent is evidentiary and, if compelled, presumptive. If not, in the

when there is no evidence from which an intent contrary to that embedded in knowing aid may be inferred, i.e., when a contrary intent is not a material issue in the case, knowing aid *is* a criterion of intent.

This fits with our ordinary understanding of intent. "[A] great many of our descriptions of events effected by human beings are *formally* descriptions of executed intentions." (Anscombe, Intention, *supra,* at p. 87; original italics.) That someone knowingly aided a criminal offense is ordinarily descriptive of an intention to achieve that which the actor knows will be achieved by his act of aid. Indeed, if a defendant testifies that he knowingly aided the perpetrator of a crime the question immediately arises, what else could the defendant say or show that would dissuade us from believing that it was his intent to facilitate the offense? At the least this circumstance calls for an explanation which would defeat the intention thus ascribed. Although the defendant has no formal burden of defeasance, he is at risk of a conviction if, in this circumstance, he does not raise a reasonable doubt of his intent by the production of evidence negating the ascribed intention. (Cf. *Tewksbury, supra,* 15 Cal.3d at p. 964, fn. 9.)

It follows that the appropriateness of knowing aid as a criterion of intent, and hence (absent its circumstantial ambiguities) the appropriateness of CALJIC No. 3.01, is dependent upon the facts of the case. CALJIC No. 3.01 conveys the required intent unless a contrary inference of intent is a material issue in the case. "Such a 'material issue' is 'presented by the evidence' . . . when the record contains 'any evidence deserving of any consideration whatsoever' relative to it. . . ." (*Garcia, supra,* 36 Cal.3d at p. 556.) What counts as a material issue of contrary intent, i.e., its legal measure, is disclosed in *Beeman* and in the examples it advances as showing a contrary intent.

The first is *Hicks* v. *U.S.* (1893) 150 U.S. 442 [37 L.Ed. 1137, 14 S.Ct. 144]. An instruction required the jury to conclude that from the mere utterance of words that had the effect of encouraging the perpetrator to commit an offense, it must be concluded that the utterer intended them to be understood as such. The defendant testified that his words were intended to dissuade the perpetrator. An intent to dissuade is the exact opposite of an intent to encourage. Thus the instruction prevented the jury from crediting the

---

absence of evidence which negates the intent embedded in such a formulation, *Tewksbury* advances a criterion of intent. To say that a certain *kind* of proof "satisfies the requirement" of intent tells us what counts as (is a criterion of) intent. *Beeman* impliedly recognizes this usage in the phrasing of its holding as requiring "*proof* [our italics] that an aider and abettor act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose . . . of . . . facilitating commission of the offense." (*Id.,* at p. 560.)

defendant's testimony and thereby removed the issue of his intention from consideration.[15]

A second example is similar in kind. In *People* v. *Bolanger* (1886) 71 Cal. 17, a case arising under the accomplice provisions of Penal Code section 1111 (see fn. 13), a witness challenged as an accomplice stated that he intended to participate in the larceny charged against the perpetrator but had feigned complicity for the purpose of detecting the thieves. The court held that he was not an accomplice, saying that "[a]n accomplice is one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of the crime." (*Id.*, at p. 20.) To act so as to frustrate a criminal objective negates an intent to further it.

The facts in *Beeman* are of a slightly different kind. Beeman admitted that he had aided his friends' commission of a robbery and that he was aware of their preparation to do so but testified that he did not believe that they would go through with it and that he had repeatedly told them that he did not want to be involved. In this manner Beeman sought to dissolve the connection between his acts of aid and his awareness of the criminal venture and thereby to negate the intent embedded in their conjunction. With respect to his incriminating conduct after the robbery he testified that he took possession of the stolen goods and feigned attempts to sell it so as to recover and return it to the victims and thus sought to bring himself within the feigned accomplice motif.

These examples show that only evidence which directly counters an intent to facilitate the offense, i.e., which shows that the defendant did not so intend, defeases the intent conveyed by knowing aid. That rules out, as immaterial, evidence of any intention which is congruent with the culpable intention.

Vann claims no intention which negates the culpable intention embedded in CALJIC No. 3.01. Nor is there evidence from which an inference of such an intention could be drawn. Vann has only one theory of his own mentation which he posed as excluding an intention to see Rogers fully succeed in his criminal enterprise. He testified that he intervened to disarm the victim (and later batter him) because Rogers is his brother-in-law. That suggests that Vann acted to disarm the victim only to prevent harm to Rogers and thereby had no intent to see Rogers succeed in robbing his victim. Assuming this claim to be true, it does not negate an intent to facilitate

---

[15]*Beeman* comments, regarding *Hicks,* that "[i]f the jury were instructed that the law conclusively presumes the intention of the accused solely from his or her voluntary acts, it would ' "effectively eliminate intent as an ingredient of the offense" ' and would ' " 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.' " ' " (*Beeman,* 35 Cal.3d at p. 559.)

Rogers' crime.[16] That Vann sought to help Rogers out of familial concern does not negate an intention to facilitate the robbery. Rather it presents a motive for the aid which is consistent with his culpability. "One who aids and abets does not necessarily have the intention of enjoying the fruits of the crime." (*People* v. *Terry* (1970) 2 Cal.3d 362, 401 [85 Cal.Rptr. 409, 466 P.2d 961].) "The accomplice's interest . . . need not be financial; there may be many reasons why he shares in the hope for success." (LaFave & Scott, Criminal Law (1972) p. 508, fn. omitted.)

Vann's defense supports the intention measured by knowing aid. He "cannot profess not to have had the intention of doing the thing [aiding Rogers] that was a means to an end of his [protecting Rogers from harm]." (Anscombe, Intention, *supra,* p. 44.) The voluntary disarming of a robbery victim in the course of a robbery cannot be undertaken without the (culpable) "realization" that it facilitates the robbery. (See *Beeman, supra,* 35 Cal.3d at p. 558; *People* v. *Tewksbury, supra,* 15 Cal.3d at p. 960.) In sum, Vann is in the same position as the defendant in *Tewksbury.*

Unlike the circumstances in *Hicks, Beeman,* and *Bolanger,* Vann's acts were the product of (in response to) Rogers' criminal course of conduct, were criminal in and of themselves, (in wrongful taking and battery), and unambiguously reveal his awareness of their import in advancing the criminal venture. It would be absurd to say that Vann knowingly contributed to the force and fear imposed by Rogers upon the victim in the course of the robbery but is not culpable as an aider and abettor of the robbery. (See *People* v. *Bond* (1910) 13 Cal.App. 175, 185 [109 P. 150].) On these facts, CALJIC No. 3.01 adequately conveyed the required element of intention to the jury. That being the case the giving of CALJIC No. 3.01 could not have prejudiced Vann.

We add this cautionary postscript. As *Beeman* holds, it is error to give CALJIC No. 3.01. The instruction suggested in *Beeman* should be given. (See fn. 7, *ante.*) That will avoid the instructional difficulties assayed in this opinion.

### E.

█ That brings us to the significance of Vann's conviction as an aider and abettor of the robbery to his convictions of attempted murder. █ "The liability of an aider and abettor extends . . . to the natural and reasonable consequences of the acts he knowingly and intentionally aids and

---

[16]Nor is the defense of others available to Vann. Given that he knew of Roger's criminal purpose, the motive to defend Rogers is not exculpatory. (See Perkins on Criminal Law (2d ed. 1969) p. 1020; 1 Witkin, Cal. Crimes (1963) § 165, p. 157.) Moreover, Vann's claim of self-defense was rejected by the jury.

encourages. (*People* v. *Beltran* [1949] 94 Cal.App.2d 197, 207 [210 P.2d 238].)" (*Beeman, supra,* 35 Cal.3d at p. 560; see also *People* v. *Slaughter* (1984) 35 Cal.3d 629, 659-662 [200 Cal.Rptr. 448, 677 P.2d 854]; *People* v. *Durham* (1969) 70 Cal.2d 171, 179-185 [74 Cal.Rptr. 262, 449 P.2d 198]; cf. *People* v. *Caldwell* (1984) 36 Cal.3d 210 [203 Cal.Rptr. 433, 681 P.2d 274].) This is a question of legal causation independent of any intention that the result obtain. (See Sayre, *Criminal Responsibility for The Acts of Another* (1930) 43 Harv.L.Rev. 689, 702-722; but see Kadish, *Complicity, Cause and Blame: A Study in the Interpretation of Doctrine* (1985) 73 Cal.L.Rev. 323.)[17] The "acts . . . aid[ed]," upon which such consequences are predicated, are the criminal acts (offenses) of which the accomplice stands convicted, here armed robbery.[18]

The jury was instructed that an aider and abettor is "liable for the natural and reasonable or probable consequences of any act he knowingly aided or encouraged." (CALJIC No. 3.00 (1981 rev.).) The prosecution's theory of Vann's liability for the attempted murders applied this test to Vann's acts in aid of the robbery: "the natural and probable consequences of any armed robbery are that someone may be hurt, someone may be shot, innocent bystander may be hurt . . . ." That issue is for the jury if properly instructed. (See e.g., *People* v. *Kauffman* (1907) 152 Cal. 331, 335 [92 P. 861]; *People* v. *Villa* (1957) 156 Cal.App.2d 128, 134 [318 P.2d 828]; *People* v. *Beltran, supra,* 94 Cal.App.2d at p. 207.) The jury was so instructed in language sanctioned by the Supreme Court. We cannot say that the finding that the attempted murders were natural and reasonable or probable consequences of the armed robbery is unreasonable. (*People* v. *Terry, supra,* 2 Cal.3d at p. 402; also see *People* v. *King* (1938) 30 Cal.App.2d 185, 202 [85 P.2d 928].)

The judgments are affirmed.

---

[17]The causal terminology used in these cases varies inexplicably. *Beeman* uses the words "natural and reasonable consequences." (35 Cal.3d at p. 560.) It got them from *People* v. *Beltran, supra,* 94 Cal.App.2d which also used "natural and probable" in the same breath. (*Id.,* at p. 206.) *Slaughter,* in similar fashion, used "natural and reasonable consequences" and "natural and probable consequence" as interchangeable. (35 Cal.3d at p. 660.) This conflation of apparently disparate notions displays a striking indifference to the language. We do not understand in what sense reasonable and probable are equivalents, or for that matter what a "reasonable consequence" is. It has been observed that "the description of the reaction as 'natural' means that it is in accordance with human nature, not abnormal, while 'probable' must be taken as meaning 'not unlikely.' " (Hart & Honore, Causation in the Law (1959) p. 140.) Notwithstanding these semantic peculiarities, we are not free to speculate about their impact upon the jury verdict. Language approved by the Supreme Court was embodied in the instruction and Vann makes no claim that it misled the jury to his prejudice.

[18]If this were not the case, if the test of aiding and abetting were to include the natural and probable consequences of the *act of aid* rather that the acts (offenses) aided, the intent requirement of *Beeman* would be emasculated.

Sparks, J., concurred.

**REGAN, Acting P. J.**—I concur with the majority, including its reasoning in part IV, but I believe it is also possible to rely on the fourth exception to per se reversibility articulated in *People* v. *Garcia* (1984) 36 Cal.3d 539, 556 [205 Cal.Rptr. 265, 684 P.2d 826] In footnote 8 of the opinion, the majority states it does not rely on the fourth exception because, given Vann's theory of defense, there was no material issue of an intent contrary to that in CALJIC No. 3.01. While this may be true, and I agree with the majority's analysis in this regard, it does not preclude the conclusion that the fourth *Garcia* exception is nonetheless applicable in this case, where (1) Vann's intent was in issue, e.g., to facilitate the robbery or to protect his brother-in-law; (2) the record establishes the intent to rob as a matter of law; and (3) any contrary evidence of intent, which the majority has ruled out as immaterial, is not worthy of consideration. Footnote 8 states we do not resolve the case on the ground that the *evidence* exclusively establishes the required intent as a matter of law, but that the *absence* of any evidence of an intent contrary to that imbedded in CALJIC No. 3.01 is dispositive. *Garcia* requires only that the *record* establish the necessary intent as a matter of law, and I read in that that a complete absence of any material evidence of *contrary* intent in the record, much as affirmative evidence in the record, may establish the required intent as a matter of law.

Appellants' petition for review by the Supreme Court was denied December 31, 1985.