[No. F008141. Fifth Dist. Feb. 7, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
CLIFFORD HAROLD JONES, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Harvey R. Zall, State Public Defender, under appointment by the Court of Appeal, and J. Robert Spangler II, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Roger E. Venturi and Eddie T. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STONE (W. A.), J.—** The law is settled that in order for an aider and abettor to be held vicariously liable for an unplanned offense, a jury must conclude beyond a reasonable doubt that the unplanned offense was a natural and probable consequence of the planned offense. (*People* v.

*Durham* (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198].) We hold, however, that error created by the failure of the trial court to instruct on this necessary jury finding is measured by the "harmless beyond a reasonable doubt" standard of review set forth in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].

### STATEMENT OF THE CASE

Appellant, Clifford Harold Jones, was charged with the following: count I —attempted murder (Pen. Code, §§ 664/187) with a firearm enhancement (Pen. Code, § 12022, subd. (a)); count II —assault with a firearm on a peace officer (Pen. Code, § 245, subd. (c)), with a firearm enhancement (Pen. Code, § 12022, subd. (a)); count III —assault with a firearm (Pen. Code, § 245, subd. (a)(2)), with a firearm enhancement (Pen. Code, § 12022, subd. (a), count IV —attempted robbery (Pen. Code, §§ 664/211), with a firearm enhancement (Pen. Code, § 12022, subd. (a)); count V —accessory to a felony (Pen. Code, § 32).

Two prior felony convictions were also alleged for purposes of enhancement. (Pen. Code, §§ 667, subd. (a), 1192.7, subd. (c).)

A jury found appellant guilty of attempted murder (count I), assault with a firearm (count III) and attempted robbery (count IV). Appellant was found not guilty of assault with a firearm on a police officer (count II) and not guilty of being an accessory to a felony (count V). He admitted the first prior felony conviction.

Appellant made a motion for new trial based upon ineffectiveness of counsel. The motion was denied; however, defense counsel was relieved at his own request and new counsel was appointed. Appellant filed a second motion for new trial based upon newly discovered evidence and alleged perjury of a prosecution witness. This motion was denied.

The court sentenced appellant to a total of 15 years and 8 months in prison.

### STATEMENT OF FACTS

Although there was conflicting evidence presented at trial, the following facts are those which are most favorable to the verdict. (*People* v. *McClary* (1977) 20 Cal.3d 218, 227 [142 Cal.Rptr. 163, 571 P.2d 620].)

On Sunday, January 12, 1986, appellant and his wife drove to his wife's mother's house in Bakersfield where they picked up appellant's brother-in-

law, Troy Nelms. Nelms and his mother had been in an altercation, and his mother requested that appellant take Nelms away. Nelms had with him a blue suitcase which contained several handguns, and several different types of ammunition.

Later that same evening appellant and Nelms prepared a board filled with nails attached to a rope. Their intent was to place the board in the road to flatten the tire of a passing car in order to induce the occupants to exit the car. Thereupon, appellant and Nelms would rob them.

At about 7:20 the following morning, Detective Nicholas Melillo of the Fresno County Sheriff's Department was driving to work in an unmarked vehicle along Marks Avenue near Carruthers when he observed a nail-studded board lying along the center line of the road. Melillo made a U-turn to investigate, but the board was no longer in the road. He made another U-turn, parked his car, armed himself and proceeded to investigate. He observed a large pile of tumbleweeds which appeared to be manmade. As he approached, he observed a puff of condensed air coming from the tumbleweeds, which he concluded was from a breathing occupant inside. He drew his weapon and announced, "Sheriff's Department. Come on out of there." Nelms appeared from behind the tumbleweeds, his face covered with a ski mask, and he began to fire at Melillo. Melillo returned fire. Melillo was subsequently hit and retreated to his vehicle when he ran out of ammunition. As Melillo retreated, Nelms came out from behind the tumbleweeds, assumed a shooter's position and fired. As Nelms ran off, Melillo radioed to dispatch that an officer was down and in need of assistance.

While talking on the radio, Melillo noticed appellant approach in his vehicle with a frantic look on his face, motioning to Melillo in an attempt to get Melillo's attention. Melillo, suspicious that appellant was somehow connected with his assailant, sped off. Appellant followed Melillo and continued to try to make contact. Melillo radioed dispatch that he was being followed.

Robert Beilage, a fireman with Mid-Valley Fire Protection District, was the first on the scene to assist Melillo. Just as Melillo was explaining the incident to Beilage, appellant's vehicle stopped at the scene. Melillo told Beilage that this was the vehicle that had been following him. Beilage questioned appellant while Melillo covered with a shotgun. Appellant told Beilage that he was on his way to his sister's house in Riverdale and that he was trying to talk to Melillo because he had heard a gunshot. Appellant was allowed to leave the scene, but was subsequently stopped for further investigation after Beilage received directions over the radio that appellant be

stopped. Appellant was questioned again, his vehicle was searched and he was released.

A subsequent search of appellant's residence resulted in the discovery of Nelms's blue suitcase and the materials used to make the nail-studded board.

## DISCUSSION

### PART I

*Instructional Error re Attempted Murder.*

 Appellant contends that his conviction for attempted murder must be reversed because the trial court failed to instruct the jury, sua sponte, on its duty to find beyond a reasonable doubt that the attempted murder of Officer Melillo was the natural and reasonable or probable consequence of the attempted robbery. According to appellant, the foregoing is an element which must be found in order to establish vicarious liability for an un-planned related offense. Respondent contends that the only elements of the offense of aiding and abetting are those set forth in *People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318],[1] and that the trial court had no duty to explain or amplify upon the instructions regarding aiding and abetting sua sponte. In any event, respondent contends that any error was harmless.

 It has long been established that an aider and abettor is criminally responsible for not only the target offense but any unplanned offense which is the natural and reasonable consequence of the acts he knowingly and intentionally aids and encourages. (*People* v. *Beeman, supra,* 35 Cal.3d at p. 560; *People* v. *Croy* (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392]; *People* v. *Durham, supra,* 70 Cal.2d at p. 181; *People* v. *Beltran* (1949) 94 Cal.App.2d 197, 207 [210 P.2d 238].) It is established as well that whether the crime charged is the natural and probable consequence of the planned offense is a factual question for the jury to decide. (*People* v. *Durham, supra,* 70 Cal.2d at p. 181; *People* v. *Hammond* (1986) 181 Cal.App.3d 463, 469 [226 Cal.Rptr. 475]; *People* v. *Rogers* (1985) 172 Cal.App.3d 502, 516 [217 Cal.Rptr. 809]; *People* v. *Villa* (1957) 156 Cal.App.2d 128, 134

---

[1] In *People* v. *Beeman, supra,* it was held that to establish vicarious liability there must be proof that the aider and abettor acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." (*Id*. at p. 560.) This rule was subsequently incorporated in CAL-JIC No. 3.00 with which the jury was instructed.

[318 P.2d 828]; *People* v. *Beltran, supra,* 94 Cal.App.2d at pp. 205-206; *People* v. *King* (1938) 30 Cal.App.2d 185, 202 [85 P.2d 928].)

■ The critical element which must be found to establish vicarious liability for the targeted offense is the aider and abettor's intent to facilitate and encourage that offense. (*People* v. *Beeman, supra,* 35 Cal.3d at p. 560.) A finding of intent is not necessary to establish liability for "the particular offense ultimately committed by the perpetrator." (*People* v. *Croy, supra,* 41 Cal.3d at p. 12, fn. 5.) The critical element which must be found to establish vicarious liability for an unplanned offense is that the offense was in fact a natural and probable consequence of the targeted offense. (*People* v. *Hammond, supra,* 181 Cal.App.3d at p. 469.)

■ In *People* v. *Hammond, supra,* it was held that when a defendant is charged not only with the perpetrator's planned offense but with another offense ultimately committed as a natural and probable consequence thereof, the jury must be given an instruction clarifying its duty to determine whether the act committed was in fact a natural and probable consequence of the criminal act knowingly and intentionally encouraged. (181 Cal.App.3d at p. 469.)[2] The jury in this case was given the first sentence of the foregoing portion of CALJIC No. 3.00 but was not given the last sentence of the instruction.

Respondent contends that "[s]ince trial in the instant case predated the finality of the *Hammond* decision, no error occurred." This court is not constrained from finding instructional error simply because at the time of trial a published opinion from another district dealing with the same issue was not yet citable authority for the proposition that error occurred. Furthermore, as noted previously, cases prior to *Hammond* have held that whether the charged offense is the natural and probable consequence of the target offense is for the jury to decide. A jury must be instructed that it must make such a finding and the failure to do so is error.

■ The remaining issue is what standard of review should be applied.[3]

---

[2]After trial of this matter, the CALJIC instructions pertaining to aiders and abettors were revised in response to *Hammond*.

[3]There are presently two cases addressing this particular claim of instructional error, *People* v. *Hammond, supra,* 181 Cal.App.3d 463 and *People* v. *Nguyen* (1988) 204 Cal.App.3d 181 [251 Cal.Rptr. 40]. These cases do not directly address the question of which standard of review is to be applied in the event of error. In *Hammond,* the error was found to be harmless under what appears to be the standard of review set forth in *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243], although *Watson* is not cited in the opinion. In *People* v. *Nguyen,* the court concludes that, assuming error, "there was no harm in this case," and cites to *Rose* v. *Clark* (1986) 478 U.S. 570, 578-579 [92 L.Ed.2d 460, 470-471, 106 S.Ct. 3101]. (204

The standard of review for *Beeman* error is the *Chapman* test, that is, whether the instructional error was harmless beyond a reasonable doubt. (*People* v. *Dyer* (1988) 45 Cal.3d 26, 63 [246 Cal.Rptr. 209, 753 P.2d 1].) Although the instructional error in the instant case does not constitute *Beeman* error per se, there is no logical basis for differentiation for purposes of the standard of review.

The *Dyer* court relied upon *Rose* v. *Clark, supra,* 478 U.S. 570 [92 L.Ed.2d 460], in which the United States Supreme Court emphasized that those cases in which *Chapman* does not apply and in which reversal per se is mandated are "the exception and not the rule." (478 U.S. at p. 578 [92 L.Ed.2d at pp. 470-471].) Reversal per se is mandated only if the error necessarily rendered the trial fundamentally unfair, if it aborted the basic trial process, or denied it altogether (*id.* at pp. 577-578), thereby permitting a presumption of prejudice (*Bank of Nova Scotia* v. *United States* (1988) 487 U.S. 250, 256-257 [101 L.Ed.2d 228, 239, 108 S.Ct. 2369, 2375]). Otherwise, the *Chapman* standard of review applies. (*People* v. *Odle* (1988) 45 Cal.3d 386, 414-415 [247 Cal.Rptr. 137, 754 P.2d 184].)

▮ Instructional error must be analyzed in terms of its potential impact on the actual trial. (*Id.* at p. 413.) Instructional error compels reversal only when the jury is wholly precluded from considering an essential element so as to amount to a directed verdict. (*Pope* v. *Illinois* (1987) 481 U.S. 497, 502-504 [95 L.Ed.2d 439, 446-447, 107 S.Ct. 1918, 1922-1923]; *Rose* v. *Clark, supra,* 478 U.S. at p. 578 [92 L.Ed.2d at pp. 470-471]; *People* v. *Croy, supra,* 41 Cal.3d at p. 13.)

Although the jury in the instant case was not instructed that it must determine whether the crime charged was a natural and probable consequence of the targeted offense, they were told that "[o]ne who intentionally aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing but he is also liable for the natural and reasonable or probable consequence of any act that he knowingly and intentionally aided or encouraged." Thus, the issue was not completely removed from the jury's consideration.

---

Cal.App.3d at p. 189.) We take up the issue because of the apparent uncertainty regarding the appropriate standard of review.

In light of evidence that appellant knew Nelms was a violent, desperate character and that he was armed with a gun for the purpose of committing robbery, the error was harmless beyond a reasonable doubt.

PART II—III*

. . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Hamlin, Acting P. J., and Baxter, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 4, 1989.

---

*See footnote, *ante,* page 1090.