[No. F011856. Fifth Dist. Oct. 15, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
PATRICIO CERVANTES TORRES, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, III, IV and V.

**COUNSEL**

Barbara Michel, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Lilia E. Garcia, Roy W. Hewitt and Jane Olmos, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MARTIN, Acting P. J.**—Appellant was charged with one count of sale or furnishing heroin in violation of Health and Safety Code section 11352.[1] It was further alleged that appellant had been previously convicted of

---

[1] All statutory references are to the Health and Safety Code unless otherwise indicated.

violating section 11351 within the meaning of section 11370.2. On that same day, appellant pleaded not guilty and denied the allegation.

A jury trial commenced on January 23, 1989. The jury convicted appellant as charged in count I and appellant waived his right to a jury trial on the prior conviction allegation and admitted the truth of the allegation. He was sentenced on February 23, 1989, and filed a timely notice of appeal on March 13, 1989.

## FACTS

In the afternoon of October 12, 1988, Bakersfield Police Department Detectives Jess Molinar and Stanley Mosley were conducting a narcotics investigation "undercover" in the area of Martin Luther King, Jr., park in Bakersfield, California. The park was known as a location where drug transactions were frequent. The detectives were in the area to "monitor" the drug activity and to "possibly make a purchase."

The detectives observed a car approach and stop near two men later identified as appellant and Mr. Cortez, who were standing in the park. Cortez and appellant ceased their conversation and Cortez walked to the driver's side of the car. It was Detective Molinar's opinion, based on his experience and training, that "a transaction had taken place between Mr. Cortez and the driver of the vehicle." It appeared to Detective Molinar that the unidentified driver handed Cortez money and, in return, Cortez handed something to the driver. After the exchange was completed, Cortez walked back to the appellant.

The detectives drove their vehicle to within approximately 50 feet of appellant and Cortez's location. Cortez immediately approached the passenger side of the car and asked the passenger, Detective Molinar, what he wanted. Detective Molinar responded that he wanted $20 worth of cocaine. Cortez informed them he did not have any cocaine, only heroin. Detective Molinar indicated that he would accept heroin and handed Cortez $20. Cortez then placed a bindle of heroin in Detective Molinar's hand. When asked if he wanted another bindle, Detective Molinar replied in the affirmative. Cortez then told Detective Molinar to wait because Cortez had to go get it.

During this exchange, appellant had walked toward two other people who were sitting in the park, located approximately thirty yards from where appellant and Cortez had originally been standing when the detectives first noticed them. Cortez walked over to appellant, they spoke briefly and then

appellant bent down and picked up an object from the ground and handed it to Cortez. Cortez then returned to the detectives' car.

Detective Molinar asked for the bindle and promised to pay $20. Cortez demanded the $20 first. Detective Molinar then informed Cortez he was a police officer and arrested him. Cortez was holding a bindle containing 36 milligrams of heroin in his left hand.

During this time, appellant began walking away in a southerly direction through the park. Detective Mosley exited his vehicle and identified himself both in English and in Spanish as a police officer. Appellant, however, continued walking away. Detective Mosley caught up with him, grabbed appellant and removed a knife from appellant's hand. Appellant had not made any threatening gestures with the knife.

Detective Molinar testified that the typical method of heroin sales in the park is by "curb service" where the purchaser drives up and a "runner" takes the cocaine or heroin to the purchaser. Often, two people other than the runner are involved in the sale of drugs, i.e., one possesses the drugs while the other holds the money. By conducting the drug sales operation in this manner, there is less chance the police will find the drugs and the money together if someone is detained. This separation of assets creates more difficulty in proving possession for purposes of sale, as opposed to simple possession, since one factor considered proof of possession for purposes of sale is possession of an amount of money consistent with the sale of drugs.

Detective Molinar also testified that it is common practice for drug dealers selling narcotics in the park to keep the drugs in the grass, bottle caps, cigarette packages, sprinkler heads, trees, picnic tables, etc., where they can be hidden. This practice makes it more difficult for law enforcement to locate the narcotics if the supplier is arrested or detained. Thus, it was Detective Molinar's opinion based on his training and expertise that appellant's behavior in reaching down and picking up something off of the ground when Cortez walked over to him after telling Detective Molinar that he had to go get another bindle was consistent with standard procedures employed when selling drugs in that particular park. That being the case, it was not unusual that appellant had no drugs in his possession at the time of arrest.

Appellant did not testify in his own defense.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE*

. . . . . . . . . . . . . . . . . . . . . .

### II. JURY INSTRUCTIONS REGARDING AIDING AND ABETTING

Appellant claims that the crime of aiding and abetting a sale of heroin requires specific intent necessitating the giving of specific intent instructions which was not done in this case. "Specifically, appellant contends that: (1) where one is charged as an aider and abettor on circumstantial evidence, the crime charged becomes a specific intent crime and CALJIC Nos. 3.31 and 2.02 rather than 3.30 must be given."

#### *A. Necessity of specific intent instructions.*

 Appellant's argument centers on the assertion that aiding and abetting is a specific intent crime. Appellant argues that since aiding and abetting refers to a defendant's intent to do an act or achieve an additional consequence than merely the description of a particular act, i.e., that there is an intent to do a further act or achieve a future consequence, the crime is one of specific intent. (*People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370].)

Respondent simply counters to all of these contentions that appellant is mistaken in asserting that aiding and abetting is a specific intent crime since it is "not a crime at all, it is a theory of vicarious liability." Respondent cites *People* v. *Croy* (1985) 41 Cal.3d 1, 12, footnote 5 [221 Cal.Rptr. 592, 710 P.2d 392], and *People* v. *Brigham* (1989) 216 Cal.App.3d 1039, 1046, 1049, footnote 8 [265 Cal.Rptr. 486].

We have found no case and none has been cited by either party which disposes of this issue. Appellant relies primarily upon *Willard* v. *California* (9th Cir. 1987) 812 F.2d 461 which states in its conclusion that the "aiding and abetting jury instructions used at Willard's trial were erroneous under California law because they omitted the specific intent element of the crime." (*Id.* at p. 465.) This conclusion was made without analysis and amounts to pure dicta since the court specifically stated in the body of its opinion that it "need not reach the merits of this argument because the error, if any, was harmless beyond a reasonable doubt." (*Id.* at p. 464.)

---

*See footnote, *ante*, page 763.

In *People* v. *Beeman* (1984) 35 Cal.3d 547, 560-563 [199 Cal.Rptr. 60, 674 P.2d 1318], our Supreme Court analyzed CALJIC Nos. 3.00 and 3.01 as then written and concluded they failed to adequately inform the jury of the criminal intent required to convict a criminal accused as an aider and abettor.

The *Beeman* court explained "that the weight of authority and sound law require proof that an aider and abettor act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose of either committing, or of encouraging or facilitating commission of, the offense. [Citations.] [¶] When the definition of the offense includes the intent to do some act or achieve some consequence beyond the *actus reus* of the crime [citation], the aider and abettor must share the *specific intent* of the perpetrator . . . . [A]n aider and abettor will 'share' the perpetrator's *specific intent* when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime. [Citations.]" (*People* v. *Beeman, supra*, 35 Cal.3d at p. 560, italics added to references to "specific intent.") *Beeman* also concluded that CALJIC No. 3.00 did not accurately embody the criminal intent required and expressly stated that "[t]he liability of an aider and abettor extends also to the natural and reasonable consequences of the acts he knowingly and intentionally aids and encourages." (*People* v. *Beeman, supra*, 35 Cal.3d at p. 560.)

The lower court in the instant case adequately defined aiding and abetting pursuant to the suggestion of the *Beeman* court which the CALJIC committee adopted in the 1984 revision of CALJIC No. 3.01.

An aider and abettor's liability for a principal's criminal act was described as "derivative" in *People* v. *Brigham, supra*, 216 Cal.App.3d 1039, 1052. "Technically, only the perpetrator can (and must) manifest the mens rea of the crime committed. Accomplice liability is premised on a different or, more appropriately, an equivalent mens rea. [Citation.] This equivalence is found in *intentionally* encouraging or assisting or influencing the nefarious act." (*People* v. *Luparello* (1986) 187 Cal.App.3d 410, 439 [231 Cal.Rptr. 832].) The aider and abettor's liability "is a *question of legal causation* independent of any intention that the result obtained. [Citations.]" (*People* v. *Rogers* (1985) 172 Cal.App.3d 502, 515 [217 Cal.Rptr. 809], italics added; *People* v. *Brigham, supra*, 216 Cal.App.3d 1039, 1053.)

"The critical element which must be found to establish vicarious liability for the targeted offense is the aider and abettor's intent to facilitate and encourage that offense." (*People* v. *Jones* (1989) 207 Cal.App.3d 1090, 1096 [255 Cal.Rptr. 464].) A finding of intent is not necessary to establish

liability for "the particular offense ultimately committed by the perpetrator." (*People* v. *Croy, supra*, 41 Cal.3d at p. 12, fn. 5.) "The critical element which must be found to establish vicarious liability for an unplanned offense is that the offense was in fact a natural and probable consequence of the targeted offense. (*People* v. *Hammond* [(1986)] 181 Cal.App.3d [463,] 469.)" (*People* v. *Jones, supra*, 207 Cal.App.3d 1090, 1096.)

*People* v. *Hammond* (1986) 181 Cal.App.3d 463 [226 Cal.Rptr. 475] held that when a defendant is charged not only with the perpetrator's planned offense but with another offense ultimately committed as a natural and probable consequence thereof, the jury must be given an instruction clarifying its duty to determine whether the act committed was in fact a natural and probable consequence of the criminal act knowingly and intentionally encouraged. (*Id*. at p. 469.) The court further held Hammond was not prejudiced by the faulty instructions because he was tried on a theory of aiding and abetting, and "[u]nder such theory of vicarious liability, the jury was not required to find that he possessed the specific intent to kill." (*Id*. at pp. 468-469.)

 Our courts have recognized that as an aider and abettor, a defendant " 'need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator. His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonable foreseeable offense committed as a consequence by the perpetrator. [Therefore,] It is the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense, which *Beeman* holds must be found by the jury. [Citation.]' (*People* v. *Croy, supra*, 41 Cal.3d at p. 12, fn. 5.)" (*People* v. *Patterson* (1989) 209 Cal.App.3d 610, 614-615 [257 Cal.Rptr. 407].) Nevertheless, the perpetrator must have the requisite specific intent of the target offense and the jury must be so instructed. (*Id*. at p. 615.)

Thus, it seems to us that respondent's retort that aiding and abetting is not a crime is of no great assistance to our analysis. It is true that aiding and abetting is a theory of vicarious liability; however, the theory of aiding and abetting does not exist in a vacuum. It is the aiding and abetting of a committed offense or the attempted commission of an offense which constitutes a crime. (See *People* v. *Hood, supra*, 1 Cal.3d 444, 456-457.)

In our view, aiding and abetting a general intent crime does not require a specific intent or an accompanying instruction to that effect. Nevertheless, assuming arguendo to the contrary, it is clear that in the instant case the

jury was properly instructed in the language of CALJIC No. 3.01 which requires that they find said intent to encourage or facilitate the commission of the perpetrator's intended crime. Any attempt to further instruct the jury on the intent necessary for aiding and abetting would appear to be redundant. Thus, we conclude that in the instant case, even assuming error occurred in failing to instruct on specific intent in the language of CALJIC No. 3.31, it could not possibly have affected the jury's finding. The jury was correctly and sufficiently instructed on the intent required to find that appellant had aided and abetted Cortez and if they had been further instructed on specific intent, beyond any reasonable doubt, the jury would not have reached a result more favorable to appellant. There is no miscarriage of justice. (Cal. Const., art. VI, § 13.)

Moreover, the instructions as given required that an aider and abettor have acted with knowledge of the perpetrator's unlawful purpose; hence, one aspect of appellant's mental state was before the jury. (See *People* v. *Croy, supra*, 41 Cal.3d at pp. 13-14.) According to the prosecution's evidence, appellant participated in the sale of heroin as an instigator with full knowledge and intent that the sale occur. Appellant's defense, by contrast, was essentially a denial of any knowledgeable or intentional participation in the sale. If the jury believed the prosecution's case, it could not have determined that appellant, although knowing the perpetrator's criminal purpose, participated without intent to further that purpose. Rather, the jury would have concluded either that appellant knew of and shared the perpetrator's intent or that he had nothing to do with the sale of heroin. Omission of any mental state jury instruction was therefore harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People* v. *Malone* (1988) 47 Cal.3d 1, 49-50 [252 Cal.Rptr. 525, 762 P.2d 1249]; *People* v. *Steeg* (1989) 209 Cal.App.3d 1566, 1575 [258 Cal.Rptr. 86].)[2]

### B. Whether the trial court erred in failing to instruct the jury on the mental state necessary to convict.

In this regard appellant complains (1) that the court erred in failing to instruct the jury in the language of CALJIC No. 3.31.5[3] regarding the

---

[2] In view of this conclusion, i.e., that aiding and abetting is a general intent crime, it would serve no purpose to discuss appellant's additional claims of instructional error related to this issue which hinge upon his argument that aiding and abetting is a specific intent crime.

[3] CALJIC No. 3.31.5 reads: "In [each of] the crime[s] charged in [Count[s] _____ , _____ and _____ of] the [information] [complaint] [namely, _____ , _____ and _____ ,] there must exist a cer-

requisite mental state and (2) that mere knowledge of the crime did not constitute aiding and abetting (CALJIC No. 3.01). According to appellant, the necessary mental state for a conviction for sale of heroin, on an aiding and abetting theory, is knowledge of its nature as a controlled substance and of the unlawful purpose of the perpetrator, coupled with the specific intent to commit, encourage or facilitate the sale. Appellant complains that the trial court in failing to give CALJIC No. 3.31.5 deprived him of the right to have the jury determine the existence of each element of the offense.

Appellant also claims the deleted portion of CALJIC No. 3.01[4] should have been given here because of the fact there was no evidence that appellant knew that what he was handing to Cortez was heroin and thus there was insufficient evidence that appellant was criminally liable. Appellant contends that under these circumstances the jury should have been told that merely knowing that Cortez would commit a crime did not amount to a crime itself. This, appellant argues, was prejudicial error since it relieved or lightened the prosecution's burden of proving each element of the offense and therefore violated appellant's due process rights. (*Sandstrom* v. *Montana* (1979) 442 U.S. 510, 520-524 [61 L.Ed.2d 39, 48-51, 99 S.Ct. 2450].)

There is a sua sponte duty to instruct in the omitted language if the evidence, believable or not, warrants it. (*People* v. *Perry* (1979) 100 Cal.App.3d 251, 260-261 [161 Cal.Rptr. 108].)

The jury was fully instructed concerning the appropriate mental states involved and, here, there was no danger appellant would be convicted because he merely negligently or accidentally aided in the commission of the sale of heroin in violation of section 11352. The trial court properly and clearly instructed that appellant's liability as an aider and abettor depended upon appellant's intentions that by his actions he facilitated or encouraged Cortez's sale of heroin in violation of section 11352.

In light of the entire record and the evidence as a whole, including appellant's activities as observed by the detectives, an interpretation that appellant was unaware of Cortez's sale of heroin and appellant's failure to understand the nature of the substance of Cortez's transactions or the lack

---

tain mental state in the mind of the perpetrator. Unless such mental state exists the crime to which it relates is not committed.

"In the crime of _____ , the necessary mental state is _____ .

" . . . . . . . . . . . . . . .

"[The mental state[s] required [is] [are] included in the definition[s] of the crime[s] charged.]"

[4]That portion which was deleted would have read: "Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting."

of intent to aid and abet, is simply not a reasonable interpretation. Nor is it an interpretation that any reasonable trier of fact would reach after viewing the evidence in this case. (*Chapman* v. *California, supra*, 386 U.S. 18.)

III. - V.*

. . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Ardaiz, J., and Reid, J.,† concurred.

---

*See footnote, *ante*, page 763.

†Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.