Filed 9/7/23  P. v. Johnson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C096781 |
| Plaintiff and Respondent, | (Super. Ct. No. 114436) |
| v. | |
| O'SHAY JOHNSON, | |
| Defendant and Appellant. | |

In 1993, a jury found defendant O'Shay Johnson and a codefendant guilty of, among other offenses, attempted first degree murder.  In 2022, defendant filed a petition for resentencing under Penal Code section 1172.6.[1]  The trial court denied the petition at the prima facie stage, concluding defendant was ineligible for resentencing as a matter of law.  On appeal, defendant asserts that (1) based on a literal reading of section 1172.6,

---

[1]     Undesignated statutory references are to the Penal Code.

Defendant petitioned for resentencing under former section 1170.95.  Effective June 30, 2022, the Legislature renumbered former section 1170.95 as section 1172.6 without substantive changes.  (Stats. 2022, ch. 58, § 10.)

subdivision (a), the trial court erred in denying his petition, and (2) applying certain language in that subdivision to murder convictions, but not attempted murder convictions, violates equal protection principles. We will affirm.

BACKGROUND

"On the morning of June 23, 1992, shortly before 9:30 a.m. [the victim] . . . was standing outside [his] house chatting with a neighbor. A gray car pulled up . . . . In the car were three African American men with ski masks on. The driver fired a shot at [the victim]; he turned to run and another shot hit him in the hip and he fell down. The car then drove up on the [victim's] lawn. The men continued to shoot at [the victim] who, after being hit six times, crawled under his neighbor's car. The driver pursued him while his passengers shot at the [victim's] house. The driver stuck his gun underneath the car and shot [the victim] repeatedly."[2] (*People v. Johnson* (Oct. 24, 1994, C015917) [nonpub. opn.].)

An amended information charged defendant and his codefendant with attempted murder (§§ 664, 187—count one); assault with a firearm (§ 245, subd. (a)(2)—count two); shooting at an inhabited house (§ 246—count three); aggravated mayhem (§ 205—count four); discharge of a firearm from a motor vehicle at another person (former § 12034, subd. (c)—count five); and unlawfully driving and taking a vehicle. (Veh. Code, § 10851—count six.) Defendant was individually charged with discharging a firearm in a grossly negligent manner (§ 246.3—count eight), and his codefendant was individually charged with possession of a firearm by a felon. (Former § 12021, subd. (a)—count seven.) In connection with counts one through four, the information alleged

---

[2]    We set forth this sparse summary from our prior appellate opinion for background purposes only, as have both defendant and the People in their briefing. Defendant contends we should not consider the facts from our prior opinion or in police reports in deciding this appeal. We have relied neither on facts from our prior opinion nor facts from police reports in evaluating defendant's entitlement to relief.

defendant and his codefendant each personally used a firearm (§ 12022.5, subd. (a)), and personally inflicted great bodily injury on the victim. (§ 12022.7.) The information also alleged a criminal street gang enhancement. (§ 186.22.)

In 1993, a jury found defendant guilty on all counts and found true the enhancement allegations that defendant personally used a firearm and personally inflicted great bodily injury on the victim as to counts one, three, and four. The trial court sentenced defendant to life in prison with the possibility of parole on the attempted murder count, a stayed term of life in prison with the possibility of parole on the aggravated mayhem count, plus 15 years eight months on the remaining counts. This court affirmed the judgment on direct appeal. (*People v. Johnson, supra*, C015917.)

In 2022, defendant filed a form petition for resentencing under section 1172.6 containing the requisite representations. (See § 1172.6, subd. (a).) The trial court denied defendant's petition at the prima facie stage, concluding the jury instructions given at defendant's trial conclusively established the jury convicted him on a still-valid theory.

DISCUSSION

I

*Section 1172.6 Resentencing—Background and General Legal Principles*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, §1(f).) Senate Bill 1437 achieved this by amending sections 188 and 189.

Section 188, subdivision (a)(3) now provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her

3

participation in a crime." Senate Bill 1437's changes to section 189 relevant to felony murder are not at issue here.

Senate Bill 1437 also created a mechanism for individuals convicted of qualifying offenses to petition for resentencing in what is now section 1172.6. Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) amended section 1172.6 to expand its coverage beyond those convicted of murder to include individuals convicted of "attempted murder under the natural and probable consequences doctrine, or manslaughter . . . ." (Stats. 2021, ch. 551, § 2; § 1172.6, subd. (a).)

Section 1172.6, subdivision (a) now provides: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

Upon submission of a section 1172.6 petition, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner

4

makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).)

The inquiry at the prima facie stage under section 1172.6, subdivision (c) is "limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) "Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Ibid*.) " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Ibid*.) To determine whether the petitioner has made the requisite prima facie showing, the trial court may examine the petitioner's record of conviction. (*Id*. at pp. 970-971.) If the record of conviction establishes the petition lacks merit as a matter of law, the trial court may deny the petition without conducting further proceedings. (See *id*. at p. 971 [the "record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].)

We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

II

*Denial of Defendant's Petition for Resentencing at Prima Facie Stage*

The petitioning mechanism in section 1172.6 is only available to individuals "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter . . . ." (§ 1172.6, subd. (a), italics added.) Defendant asserts the trial court erred in denying his section 1172.6 petition for resentencing based on a literal reading of this subdivision, and that a literal reading of this

language leads to absurd results which contradict the Legislature's stated intent. Specifically, among other things, defendant asserts a literal reading of this language, which only authorizes defendants convicted of attempted murder under the natural and probable consequences doctrine to petition for section 1172.6 relief, fails to effect the Legislature's intent to afford relief to any defendant convicted of attempted murder under circumstances where malice was imputed to that person based solely on that person's participation in a crime.

Under the plain, unambiguous language of section 1172.6, subdivision (a) (see generally *People v. Lucero* (2019) 41 Cal.App.5th 370, 394-395 [discussing canons of statutory construction]), a person convicted of attempted murder is potentially eligible for relief only if that conviction was based on the natural and probable consequences doctrine. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*) [former § 1170.95, now § 1172.6, "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].)

Here, as defendant acknowledges, his jury was not instructed on the natural and probable consequences doctrine. Thus, because the instructions did not permit the jury to convict defendant of "attempted murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)), under the plain language of section 1172.6, subdivision (a), he is ineligible for relief as a matter of law. (*Coley, supra*, 77 Cal.App.5th at p. 548 [defendant convicted of attempted murder not entitled to § 1172.6 relief because jury was not instructed on natural and probable consequences doctrine].)

Moreover, even if section 1172.6 relief were available to defendants convicted of attempted murder on an imputed malice theory other than the natural and probable consequences doctrine (or if his equal protection argument addressed in part III of our Discussion, *infra*, had merit), we conclude defendant is not entitled to relief as a matter of law because the instructions given at his trial did not allow the jury to convict him under any such theory.

While defendant acknowledges that his jury was not instructed on the natural and probable consequences theory, he emphasizes the trial court did instruct the jury on aiding and abetting principles. He therefore contends the record of conviction does not "conclusively refute" the possibility he was found guilty based on a theory under which malice was imputed to him based solely on his participation in a crime. We disagree.

In its attempted murder instruction, CALJIC No. 8.66, the trial court instructed the jury, in part: "In order to prove such crime, each of the following elements must be proved; [¶] 1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. *The person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being.*" (Italics added.)

The trial court also instructed the jury with CALJIC No. 8.67, defining the terms "willful," "deliberate," and "premeditated," instructing the jury, in part: "It is also alleged in [Count 1 of] the information that the crime attempted was willful, deliberate, and premeditated murder. If you find the defendant guilty of attempt to commit murder, you must determine whether this allegation is true or not true. [¶] . . . [¶] *To constitute willful, deliberate, and premeditated attempt to commit murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill* and makes a direct but ineffectual act to kill another human being." (Italics added.)

Thus, to find defendant guilty of attempted murder as the perpetrator, the jury would have found he committed a direct but ineffectual act while harboring "express malice aforethought, namely, a specific intent to kill unlawfully another human being." (CALJIC No. 8.66.) Further, to find that defendant acted willfully, deliberately, and with premeditation, the jury must have found, among other things, that defendant "weigh[ed] and consider[ed] the question of killing and the reasons for and against such a choice and, having in mind the consequences, decide[d] to kill . . . ." (CALJIC No. 8.67.)

7

As for the possibility the jury convicted defendant of attempted first degree murder on an aiding and abetting theory rather than as a direct perpetrator, "[d]irect aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775 [(2021-2022 Reg. Sess.)]." (*Coley, supra*, 77 Cal.App.5th at p. 548.) The trial court provided the jury with several instructions explaining aiding and abetting principles.

CALJIC No. 3.00 instructed defendant's jury that principals in the commission of a crime are "equally guilty" and include (1) "[t]hose who directly and actively [commit] [or] [attempt to commit] the act constituting the crime," or (2) "[t]hose who aid and abet the [commission] [or] [attempted commission] of the crime." CALJIC No. 3.01 instructed the jury, in part: "A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she, [¶] (1) *with knowledge of the unlawful purpose of the perpetrator* and [¶] (2) *with the intent or purpose of committing, encouraging, or facilitating the commission of the crime*, by act or advice aids, promotes, encourages or instigates the commission of the crime." (Italics added.)

Thus, the jury would have found that, if defendant aided and abetted the commission of the crime, he did so with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating the commission of the crime. (CALJIC No. 3.01.) And, with regard to attempted murder, the perpetrator's "unlawful purpose" (CALJIC No. 3.01) was a "specific intent to kill." (CALJIC No. 8.66.) These instructions made clear that to convict defendant for aiding and abetting attempted murder, the jury would have to find he harbored the same specific intent to kill.

Defendant asserts the aiding and abetting instruction did not specify to which of the perpetrator's "unlawful purposes" the instruction referred, given defendant and his codefendant were alleged to have committed several crimes. Giving rise to something of a "catch-22," this argument might be more persuasive had the jury been instructed on the

8

natural and probable consequences doctrine, in which case, of course, the argument would be superfluous.

The then-relevant instruction, CALJIC No. 3.02, not given here, would have introduced to the jury the natural and probable consequences doctrine, explained in terms of the contemplated crime and crimes that would be a natural and probable consequence thereof. (See *People v. Nguyen* (1993) 21 Cal.App.4th 518, 528, fn. 2 ["CALJIC No. 3.02: 'One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any criminal act that he knowingly and intentionally aided and abetted' "].) CALCRIM No. 402, successor to CALJIC No. 3.02, addresses this concept in terms of the target offense, or the contemplated crime, and nontarget offenses. However, because the jury here was not instructed on the natural and probable consequences doctrine, it was not introduced to the concepts of contemplated or target offenses and resulting or nontarget offenses. Having not been introduced to these concepts, the jury would have no basis to believe, or authority for the premise, that it could find defendant guilty as an aider and abettor of attempted murder based on his knowledge of his codefendant's unlawful purpose to commit *some other crime*. CALJIC No. 3.01, given here, like its successor CALCRIM No. 401, addressed aiding and abetting *intended* crimes. (See *People v. Torres* (1990) 224 Cal.App.3d 763, 771 [CALJIC No. 3.01 requires jury to find intent to encourage or facilitate commission of perpetrator's intended crime].) Hypothetically, if the jury here did in fact weigh whether defendant was guilty as an aider and abettor of attempted murder and whether he knew of the perpetrator's unlawful purpose, it was not instructed, and would have had no reason to consider the perpetrator's unlawful purpose as related to any crime other than that under consideration: attempted murder. And, again, as the jury was instructed here, with regard to attempted murder, the perpetrator's "unlawful purpose" (CALJIC No. 3.01) was a "specific intent to kill." (CALJIC No. 8.66.)

Regardless of whether defendant was convicted as the perpetrator or as an aider and abettor, to convict him, the jury had to find he "harbored express malice aforethought, namely, a specific intent to kill." (CALJIC No. 8.66.) As a result, defendant is ineligible for resentencing as a matter of law.

III

*Equal Protection*

Defendant asserts that applying the phrase, "or other theory under which malice is imputed to a person based solely on that person's participation in a crime" in section 1172.6, subdivision (a) only to those convicted of murder, but not to persons convicted of attempted murder, is a violation of state and federal equal protection rights. We need not address this contention. We have concluded defendant is ineligible for section 1172.6 relief as a matter of law even if this language applied to his attempted murder conviction. Therefore, even if defendant were correct on his equal protection argument, he would not be entitled to relief pursuant to section 1172.6.

DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

                  KRAUSE    , J.

We concur:

    ROBIE     , Acting P. J.

    RENNER    , J.

10