Filed 6/27/24  P. v. Pelton CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SEAN MICHAEL PELTON,<br><br>    Defendant and Appellant. | C098246<br><br>(Super. Ct. No. 21CR3040301) |

Defendant Sean Michael Pelton twice entered AT&T's truck parking yard and removed catalytic converters from the trucks.  His partner at the second entry cut holes in the yard's fence for them to enter.  A jury found defendant guilty of two counts of petty theft, multiple counts of grand theft, and one count of vandalism.  The trial court sentenced defendant to 12 years in county jail.

On appeal, defendant contends the trial court prejudicially erred in:  (1) modifying the grand theft jury instruction; (2) admitting the testimony of an AT&T employee and a spreadsheet the employee prepared for trial as to the catalytic converters' replacement

1

costs; (3) not allowing the jury to decide whether the single larceny doctrine applied; (4) instructing the jury that vandalism is a general intent crime; and (5) imposing consecutive sentences on some grand theft counts but not others. Defendant further contends the double jeopardy clause precludes retrial on the grand theft counts because without the spreadsheet and the employee's testimony there was insufficient evidence to support his grand theft convictions.

We agree with defendant that the admission of the employee's testimony and the spreadsheet was prejudicial error. But we conclude the double jeopardy clause does not preclude retrial because our reversal is based on trial errors, not insufficient evidence. In light of this, we need not address defendant's contentions on the grand theft jury instruction, the single larceny doctrine, and sentencing. We further reject defendant's position as to the vandalism count.

We reverse defendant's grand theft convictions but uphold his remaining convictions. The matter is remanded for a possible retrial on the grand theft counts as well as resentencing.

Statutory citations are to the Penal Code unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant twice entered AT&T's maintenance truck parking yard and removed catalytic converters from AT&T's trucks. Defendant partnered with Dennis Toney during his second entry, who arrived before defendant and cut holes in the yard fence for them to enter. Defendant sold the catalytic converters to his uncle for no more than $900 per piece. AT&T spent $456 repairing the fence.

The People charged defendant with 29 counts of felony grand theft (§ 487, subd. (a), counts 1-15, 17-30), one count of petty theft (§§ 484, subd. (a), 490.2, count 16), and one count of felony vandalism (§ 594, subd. (b)(1), count 31). The People later dismissed count 16 and the trial court reduced counts 6 and 23 to misdemeanor petty theft.

2

A jury found defendant guilty as charged. The trial court sentenced defendant to 12 years in county jail, consisting of: (1) the middle term of two years on count 1, (2) consecutive eight-month terms on counts 2 to 5, 7 to 11, 17 to 19, and 29 to 30 (one third the middle term), (3) concurrent low terms of 16 months on counts 12 to 15, 20 to 22, and 24 to 28, (4) concurrent one-year terms on counts 6 and 23, and (5) a consecutive eight-month term on count 31 (one-third the middle term).

Defendant timely appealed.

## DISCUSSION

## I

### *Admission of the Spreadsheet and Ahern's Testimony*

Defendant contends the trial court erred in admitting AT&T employee John Ahern's testimony and a spreadsheet Ahern prepared for trial regarding the replacement costs of the catalytic converters. He further contends the error requires reversal of the grand theft convictions and, because no other evidence showed the value of the catalytic converters exceeding $950, an element of grand theft, a retrial on the grant theft counts is barred by the double jeopardy clause. We agree that the admission of the spreadsheet and Ahern's testimony was prejudicial error but conclude the double jeopardy clause does not preclude retrial.

A. *Additional Background*

Grand theft is committed when the property's value exceeds $950. (§ 487, subd. (a).)

Defense counsel moved in limine to exclude, among other things, Ahern's testimony, and a spreadsheet he prepared relating to the costs of replacing the catalytic converters as inadmissible hearsay.

Ahern was an area manager of fleet operations at AT&T who oversaw vehicle maintenance and repairs in California and Nevada. He decided the priority of repairs,

3

oversaw AT&T's maintenance and repairs budget for the two states, and approved any repairs over $3,000.

At the Evidence Code section 402 hearing, Ahern stated he was not certified as an auto mechanic, and the repairs were done by both AT&T employees and third-party vendors. AT&T kept maintenance and repairs billing records electronically. The invoice information was entered into AT&T's system by either authorized vendors or a team of AT&T clerks.

Ahern was a custodian of AT&T's maintenance and repairs billing records. Working with his colleague, Ahern created a spreadsheet identifying the costs of replacing each catalytic converter taken by defendant with information gathered from AT&T's system. The spreadsheet was specifically prepared for trial.

After the hearing, the trial court admitted Ahern's testimony under Evidence Code section 813, subdivision (a)(3) on the ground that he was an AT&T employee who had experience with the valuation of catalytic converters. The trial court further admitted the spreadsheet as demonstrative evidence.

At trial, Ahern testified he approved the costs associated with replacing the catalytic converters. He prepared the spreadsheet reflecting those costs for trial, using information from AT&T's maintenance and repairs billing records. After some discussions about AT&T's procedures in repairing trucks and the replacement of catalytic converters, the prosecutor sought to introduce the spreadsheet into evidence. The trial court overruled defense counsel's hearsay and foundation objections and admitted the spreadsheet. The prosecutor then showed the jury the spreadsheet, and Ahern read to the jury from the spreadsheet each affected vehicle's license plate number and the cost to replace their catalytic converters.

During her rebuttal closing argument, the prosecutor urged the jury to "rely on the cost of the catalytic converter for making a determination of theft in this case."

4

*B.    Standard of Review*

"We review the trial court's decision to admit or exclude evidence for abuse of discretion." (*People v. Dworak* (2021) 11 Cal.5th 881, 895.) "As a general rule, the erroneous admission of hearsay evidence will not result in a reversal unless it is reasonably probable the defendant would have received a more favorable result had the evidence not been admitted." (*People v. Landau* (2016) 246 Cal.App.4th 850, 866.)

*C.    Analysis*

Hearsay evidence is evidence of "an out-of-court statement offered for the truth of its content." (*People v. Sanchez* (2016) 63 Cal.4th 665, 674; accord, Evid. Code, § 1200, subd. (a).) "Documents . . . are often hearsay because they are prepared by a person outside the courtroom and are usually offered to prove the truth of the information they contain." (*Sanchez*, at p. 674.) Hearsay evidence is generally inadmissible unless it falls under an exception. (Evid. Code, § 1200, subd. (b).) "Multiple hearsay, or hearsay-within-hearsay, is admissible only when each level of hearsay 'meets the requirements of an exception to the hearsay rule.' " (*People v. Superior Court (Couthren)* (2019) 41 Cal.App.5th 1001, 1010, citing Evid. Code, § 1201.) "The proponent of hearsay has to alert the court to the exception relied upon and has the burden of laying the proper foundation." (*People v. Livaditis* (1992) 2 Cal.4th 759, 778.)

The spreadsheet here involves multiple levels of hearsay. The first level of hearsay is the spreadsheet itself, prepared by Ahern and his colleague outside the courtroom and offered to prove the catalytic converter replacement costs it contains. The second level of hearsay is AT&T's maintenance and repairs billing records prepared by its clerks and third-party vendors.

The first level of hearsay, the spreadsheet, did not fall under the business record exception as the People contend. "Business records are defined as writings made in the regular course of business, at or near the time of the event, and created through sources of information and a method of preparation reflecting its trustworthiness." (*People v.*

5

*Sanchez, supra*, 63 Cal.4th at p. 695, fn. 21, citing Evid. Code, § 1271.) "When a record is not made to facilitate business operations but, instead, is primarily created for later use at trial, it does not qualify as a business record." (*Sanchez*, at p. 695, fn. 21.) Here, Ahern admitted the spreadsheet was prepared for trial. Thus, the spreadsheet was not a business record. Because the People propose no other hearsay exception for the spreadsheet, we conclude the spreadsheet was inadmissible hearsay. Having done that, we need not examine the second level of hearsay.

We further reject the People's contention that the spreadsheet was admissible as demonstrative evidence. Demonstrative evidence is evidence that is shown to the jury "as a tool to aid the jury in understanding the substantive evidence." (*People v. Duenas* (2012) 55 Cal.4th 1, 25.) It "is not substantive evidence used to prove the facts of a case." (*Id.* at p. 21.) "Common examples of demonstrative evidence include 'maps, charts, and diagrams' [citation], all of which 'illustrate a witness's testimony.' " (*People v. Vasquez* (2017) 14 Cal.App.5th 1019, 1037.) Here, the spreadsheet did not illustrate Ahern's testimony. Ahern expressed no independent opinion about the costs of replacing the catalytic converters; rather, he read those costs to the jury as listed in the spreadsheet. At closing, the prosecutor also urged the jury to determine the case based on the costs in the spreadsheet. Thus, the spreadsheet was offered to prove the value of the catalytic converters taken by defendant, an element of grand theft. (See § 487, subd. (a).) This was an impermissible use of demonstrative evidence.

The portion of Ahern's testimony repeating the replacement costs from the spreadsheet was also inadmissible because he did nothing more than "relate as true case-specific facts asserted in hearsay statements." (*People v. Sanchez, supra*, 63 Cal.4th at p. 686.) We reject the People's contention that Ahern's testimony about replacement costs was qualified opinion about property value under Evidence Code section 813, subdivision (a)(3). Ahern never expressed his opinion as to the replacement costs based on his experience in managing AT&T's truck maintenance and repairs. He merely read

6

the numbers in the spreadsheet to the jury. A witness may not " ' "under the guise of reasons [for an opinion] bring before the jury incompetent hearsay evidence." ' " (*Sanchez*, at p. 679; accord, *Kitchel v. Acree* (1963) 216 Cal.App.2d 119, 125.)

We also reject the People's contention that Ahern's testimony as to replacement costs fell within the business records exception to the hearsay rule. Business records are writings made in the regular course of business (Evid. Code, § 1271), and oral testimony is not writing. (See Evid. Code, § 250.)

In sum, the trial court erred in admitting into evidence the spreadsheet and Ahern's testimony as to replacement costs. The People concede that if this was error, it was prejudicial because the remaining valuation evidence did not establish that the value of the catalytic converters exceed $950. (§ 487, subd. (a).) We accept this concession. Absent the spreadsheet and Ahern's testimony, it was reasonably probable that the jury would have acquitted defendant of grand theft. (See *People v. Flood* (1998) 18 Cal.4th 470, 481 [the prosecution has the burden of proving beyond a reasonable doubt each essential element of the crime].) Thus, a reversal is required. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

However, we reject defendant's contention that the double jeopardy clause bars a retrial. "[W]here the evidence offered by the State and admitted by the trial court — whether erroneously or not — would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial." (*Lockhart v. Nelson* (1988) 488 U.S. 33, 34.) In deciding whether retrial is permissible under the double jeopardy clause, we consider "all of the evidence admitted by the trial court." (*Lockhart,* at p. 41.) "Permitting retrial in this instance is not the sort of governmental oppression at which the Double Jeopardy Clause is aimed; rather, it serves the interest of the defendant by affording him an opportunity to 'obtai[n] a fair readjudication of his guilt free from error.' " (*Lockhart*, at p. 42; see *People v. Story* (2009) 45 Cal.4th 1282, 1296-1297 [following *Lockhart*].)

Here, the evidence admitted at trial showed that defendant twice entered the AT&T truck parking yard and removed catalytic converters from AT&T's trucks. And, although erroneously admitted, the spreadsheet and Ahern's testimony established the value of the catalytic converters exceeded $950. This was sufficient to support the jury's guilty verdict on the grand theft counts. Accordingly, the double jeopardy clause does not preclude retrial on those counts.

Because we reverse the grand theft convictions and remand for retrial, we need not consider whether the trial court erred in modifying the grand theft jury instruction, whether the jury should decide the application of the single larceny doctrine, or whether the trial court abused its discretion in sentencing defendant on the grand theft counts.

II

*Jury Instructions on Vandalism*

Defendant contends that the trial court prejudicially erred in instructing the jury that vandalism was a general intent crime. After a de novo review (*People v. Posey* (2004) 32 Cal.4th 193, 218), we find no error.

A.    *Additional Background*

During closing, defense counsel argued defendant was not guilty of vandalism because Toney testified he cut the fence himself and there was no testimony about a plan between Toney and defendant to do so.

The trial court instructed the jury that felony vandalism is a general intent crime while grand theft is a specific intent crime. It further instructed the jury with CALCRIM No. 401 on direct aiding and abetting liability. CALCRIM No. 401 advises the jury that to prove a defendant guilty of a crime based on aiding and abetting, the prosecutor must prove the defendant "intended to aid and abet the perpetrator in committing the crime." CALCRIM No. 401 further explains to the jury that a defendant aids and abets a crime "if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends

8

to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

B.    *Analysis*

A person commits felony vandalism when he or she "maliciously" damages any personal property not his or her own, and the amount of damage is $400 or more.  (§ 594, subds. (a)(2) & (b)(1).)  "[T]he vandalism statute itself does not require any intent besides the intent to do the proscribed acts of defacing, damaging, or destroying property, and the term 'maliciously' does not import any further specific intent or mental state."  (*People v. Moore* (2018) 19 Cal.App.5th 889, 895, citing *People v. Atkins* (2001) 25 Cal.4th 76, 85-86, 92-93; see *People v. Quarles* (2018) 25 Cal.App.5th 631, 636 [following *Moore*].)  Thus, vandalism is a general intent crime, and the trial court did not err in so instructing.  (*Moore*, at p. 896; compare with *People v. ZarateCastillo* (2016) 244 Cal.App.4th 1161, 1167 [the crime of forcible sexual penetration is a specific intent crime because it requires the act of penetration " 'to be done with the intent to gain sexual arousal or gratification or to inflict abuse on the victim' "].)

"[I]f the charged offense is a general intent crime, the aider and abettor need only knowingly and intentionally facilitate the direct perpetrator's commission of the crime, without intending some additional result or consequence not required for the crime."  (*People v. White* (2014) 230 Cal.App.4th 305, 317.)  The fact that an aider and abettor must harbor a specific intent to aid the direct perpetrator of a general intent crime "does not transform the underlying offense into a specific intent crime."  (*People v. Keovilayphone* (2005) 132 Cal.App.4th 491, 497.)

Here, the jury necessarily found defendant guilty based on the aiding and abetting theory because no evidence showed he cut the fence.  The trial court properly instructed the jury that to prove defendant guilty under the aiding and abetting theory, the prosecution must show defendant knew of the direct perpetrator's unlawful purpose and specifically intended to aid, facilitate, promote, encourage, or instigate the direct

9

perpetrator's commission of the crime.  With this instruction in place, "[a]ny attempt to further instruct the jury on the intent necessary for aiding and abetting would appear to be redundant."  (*People v. Torres* (1990) 224 Cal.App.3d 763, 771.)  We thus reject defendant's contention that the trial court was required to give the jury specific intent instructions in addition to CALCRIM No. 401.  (See *Torres*, at p. 770 ["aiding and abetting a general intent crime does not require a specific intent or an accompanying instruction to that effect"]; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1378-1379 [same].)

## DISPOSITION

The convictions on the grand theft counts (counts 1-5, 7-15, 17-22, and 24-30) are reversed but the convictions on the petty theft and vandalism counts are affirmed (counts 6, 23, and 31). The matter is remanded to the trial court to: (1) provide the People an opportunity to retry the grand theft counts; and (2) after any trial, or if the People elect not to retry defendant, conduct a full resentencing.

/s/

MESIWALA, J.

We concur:

/s/

DUARTE, Acting P. J.

/s/

WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.